**BISCHOFF et ux. v. REARICK et al.**

**No. 4710.**

Court of Civil Appeals of Texas. El Paso.

April 19, 1950.

Rehearing Denied May 10, 1950.

Frank B. Clayton, J. H. McBroom, R. P. Langford, El Paso, for appellants.

Andress, Lipscomb & Peticolas, El Paso, for appellees.

SUTTON, Justice.

This is an appeal from the 65th District Court of El Paso County.

The suit was brought by J. E. Bischoff and his wife against Harry O. Rearick, H. A. Witz and Major M. E. Chotas, to recover the balance due on a vendor's lien note in the principal sum of $2,584.44, interest thereon from September 1, 1949, and attorney's fees, same being the balance due on a note in the original principal sum of $2,850 dated September 1, 1948, executed by Rearick and Witz and assumed by Chotas, and secured by a second vendor's lien on two lots upon which is situated a duplex residence. The trial was to the court without a jury and the judgment was that the plaintiffs take nothing, from which this appeal is prosecuted. The defendants had a cross-action and judgment was likewise that they take nothing, but there is no appeal or complaint in that respect and the case is here on the appeal of the plaintiffs only.

The note bore 5½% interest, payable monthly as it accrued, and was due in monthly installments of $34.63, including interest. The note contained an acceleration clause reading: "It is understood and agreed that failure to pay this note or any installment of interest thereon when due, shall at the election of the holder of them, or any of them, mature all notes this day given by the undersigned to said payee herein."

The note is dated September 1, 1948, but because the building was not completely ready for delivery on that date the deal was actually closed November 9, 1948, but interest was collected from the date of the note. On the date the deal was closed the plaintiffs endorsed the note and delivered it to the Mortgage Investment Company of El Paso, at the office of which company the note was made payable, to secure an indebtedness to such Company. That company collected the monthly installments from that date until September 1, 1949, and deducted one-half of one per cent as a collection fee.

Most, if not all, the payments were made considerably after the first of the month when due. In July 1949, Chotas was transferred to Japan. Chotas left the property in the hands of Rearick to look after, to rent and collect the rents and pay the installments due thereon, including a monthly installment due the Mortgage Investment Company on a first lien note on the property in the sum of $65.37, making a total of $100 due each month. The payments were made in one check. Rearick made payments in July, August and September and believed he was making the payments prior to the first of the month when due. On October 7, 1949, Bischoff paid his debt to the Mortgage Investment Company and the note pledged and here sued on was returned to him. He discovered at that time the payment due on October first had not actually been paid. He took the note immediately to his attorney and directed him to notify the defendants he had declared the whole of the debt due and if not paid to bring suit to collect the same and to foreclose the lien. On that date the attorney addressed a letter to Mr. Rearick in line with the instructions received. Mr. Rearick received the letter on the 10th and immediately went to the attorney's office and made a tender of the amount due as of October first, together with any penalty that might be due as a result of the delay in payment, which tender has been kept good. The tender was declined and the suit filed, and all subsequent tenders have been likewise declined.

The plaintiff Bischoff testified the matter of discounting the note had been mentioned and briefly discussed between himself and Rearick a few times but nothing had come of it. Witz testified he had known Bischoff about twenty years and when advised of the action taken he got in touch with Bischoff to ascertain what the trouble was and Bischoff told him he had had an opportunity to sell the note at a discount and thought it was about a six year note at six per cent, but found out it was a five and one-half per cent note and ran for nine years and he felt justified in bringing the suit. Bischoff denied the testimony but the trial court found it to be true, and that Bischoff was not concerned about the lateness of the payment but used it for the purpose of maturing the debt.

■ Under the record made we think the trial court was not in error in holding plaintiffs had no right to declare the debt

due and to proceed to suit. A remedy given by contract to accelerate the maturity of a debt is harsh in nature. Crumley v. Ramsey, Tex.Civ.App., 93 S.W.2d 191.

The exercise of the remedy works a forfeiture of the right to pay over a period of time. In the instant case of some eight years. The provision for acceleration of the time of payment is a privilege running in favor of the holder and in many instances a valuable privilege. It is optional with the holder whether he will exercise it or not. The accelerated clause provides against the suffering of obvious hardships by a holder of a note or lien. Without the privilege a holder might be required to bring a series of suits, or wait an unreasonable time to collect his debt in cases, for example, where a vendee abandoned premises and defaulted in installments of principal and interest, or one or the other. It might also serve, and in many instances does, to protect the debt or lien in case of wilful or avoidable default. On the other hand, it may be used unjustly and oppressively. We think such is the case here.

 It seems now to be the established law and approved by the Supreme Court that before the accelerated provision may be resorted to and the whole debt matured demand must first be made for any installment due on the debt and an opportunity given to pay the installment before the acceleration of the entire debt for failure to pay such installment. Brown v. Hewett, et al., Tex.Civ.App., 143 S.W.2d 223, (e. r.) at page 227 on Motion for Rehearing, and the cases there cited.

The same case is authority for the proposition that equity will relieve against a provision for the acceleration of a debt when it is produced by the inequitable conduct of the creditor himself. The case there cited, it will be noted, also holds it will be relieved against when the default is the result of accident or mistake. It is true the cited case was dismissed by agreement while pending in the Supreme Court

on an application granted, but the holding quoted in the Brown-Hewett case has the approval of the Supreme Court. Of course, courts fail in their duty when they neglect to exercise their equity powers to prevent a manifest injustice, such as would be worked in this case if plaintiffs were permitted to prevail under the record in the case.

It has been suggested in the brief in response to argument made by appellees on a contention there made some of the cases cited are in conflict with the holding of this court in Kyle v. Commercial Credit Company, Tex.Civ.App., 152 S.W.2d 465, (wr. dis. c. j.) wherein it was held, since the note was payable at a designated place in the city, as the one in the instant case is, that dispensed with the necessity of presentment of demand. The points just discussed above and the propositions laid down were not in the Kyle case. There was no complaint in that case there had been no demand for the payment of the delinquent installments and an opportunity given to pay them. The complaint was the note had not been presented and demand for payment made after it had been declared due. The effort there was to avoid a default judgment taken after due service and an opportunity given to be heard, and after the default in a series of installments. There were no equities involved so far as the creditor was concerned. There was no offer to do equity, no tender of the delinquent payments.

What has been said disposes of the fourth point as well as the first. This was a trial before the court, and if the matters complained of in points two and three were error, it is harmless. Plaintiffs could not have suffered any injury as a result thereof, and in our view of the case the question of whether or not Mortgage Investment Company was the agent of plaintiffs is wholly immaterial.

The judgment of the trial court is affirmed.