**ANDERSON BROTHERS CORPORATION, Appellant,**

v.

**Robert W. O'MEARA, Appellee.**

**Robert W. O'MEARA, Appellant,**

v.

**ANDERSON BROTHERS CORPORATION, Appellee.**

**No. 19405.**

United States Court of Appeals Fifth Circuit.

Aug. 14, 1962.

Will Sears, Houston, Tex., for appellant.

James A. Pakenham, Houston, Tex., for appellee.

Before CAMERON, JONES and GEWIN, Circuit Judges.

JONES, Circuit Judge.

The appellant, Anderson Brothers Corporation, a Texas corporation engaged in the business of constructing pipelines, sold a barge dredge to the appellee, Robert W. O'Meara, a resident of Illinois who is an oil well driller doing business in several states and Canada. The appellee brought this suit seeking rescission of the sale or, in the alternative, damages. After trial without a jury, the appellee's prayer for rescission was denied, but damages were awarded. The court denied the appellant's counterclaim for the unpaid purchase price of the dredge. Both parties have appealed.[1] Appellant contends that no relief should have been given to the appellee, and the appellee contends that the damages awarded to him were insufficient.

The dredge which the appellant sold to the appellee was specially designed to perform the submarine trenching necessary for burying a pipeline under water. In particular it was designed to cut a relatively narrow trench in areas where submerged rocks, stumps and logs might be encountered. The dredge could be disassembled into its larger component parts, moved over land by truck, and reassembled at the job site. The appellant built the dredge from new and used parts in its own shop. The design was copied from a dredge which appellant had leased and successfully used in laying a pipeline across the Mississippi River. The appellant began fabrication of the dredge in early 1955, intending to use it in performing a contract for laying a pipeline across the Missouri River. A naval architect testified that the appellant was following customary practice in pipeline operations by designing a dredge for a specific use. Dredges so designed can be modified, if necessary, to meet particular situations. For some reason construction of the dredge was not completed in time for its use on the job for which it was intended, and the dredge was never used by the appellant. After it was completed, the dredge was advertised for sale in a magazine. This advertisement came to the appellee's attention in early December, 1955. The appellee

---

1. Anderson Brothers Corporation will be referred to as the appellant and O'Meara as the appellee.

wanted to acquire a dredge capable of digging canals fifty to seventy-five or eighty feet wide and six to twelve feet deep to provide access to off-shore oil well sites in southern Louisiana.

On December 8, 1955, the appellee or someone employed by him contacted the appellant's Houston, Texas, office by telephone and learned that the price of the dredge was $45,000. Terms of sale were discussed, and later that day the appellant sent a telegram to the appellee who was then in Chicago, saying it accepted the appellee's offer of $35,000 for the dredge to be delivered in Houston. The appellee's offer was made subject to an inspection. The next day Kennedy, one of the appellee's employees, went to Houston from New Orleans and inspected the dredge. Kennedy, it appears, knew nothing about dredges but was familiar with engines. After inspecting the engines of the dredge, Kennedy reported his findings to the appellee by telephone and then signed an agreement with the appellant on behalf of the appellee. In the agreement, the appellant acknowledged receipt of $17,500. The agreement made provision for payment of the remaining $17,500 over a period of seventeen months. The dredge was delivered to the appellee at Houston on December 11, 1955, and from there transported by the appellee to his warehouse in southern Louisiana. The barge was transported by water, and the ladder, that part of the dredge which extends from the barge to the stream bed and to which the cutting devices are attached, was moved by truck. After the dredge arrived at his warehouse the appellee executed a chattel mortgage in favor of the appellant and a promissory note payable to the order of the appellant. A bill of sale dated December 17, 1955, was given the appellee in which the appellant warranted only title and freedom from encumbrances. Both the chattel mortgage and the bill of sale described the dredge and its component parts in detail.

The record contains much testimony concerning the design and capabilities of the dredge including that of a naval architect who, after surveying the dredge, reported "I found that the subject dredge * * * had been designed for the purpose of dredging a straight trench over a river, lake or other body of water." The testimony shows that a dredge designed to perform sweep dredging, the term used to describe the dredging of a wide channel, must be different in several respects from one used only for trenching operations. The naval architect's report listed at least five major items to be replaced, modified, or added before the dredge would be suited to the appellee's intended use. It is clear that the appellee bought a dredge which, because of its design, was incapable, without modification, of performing sweep dredging.

On July 10, 1956, about seven months after the sale and after the appellee had made seven monthly payments pursuant to the agreement between the parties, the appellee's counsel wrote the appellant stating in part that "Mr. O'Meara has not been able to put this dredge in service and it is doubtful that it will ever be usable in its present condition." After quoting at length from the naval architect's report, which was dated January 28, 1956, the letter suggested that the differences between the parties could be settled amicably by the appellant's contributing $10,000 toward the estimated $12,000 to $15,000 cost of converting the trenching dredge into a sweep dredge. The appellant rejected this offer and on July 23, 1956, the appellee's counsel wrote the appellant tendering return of the dredge and demanding full restitution of the purchase price. This suit followed the appellant's rejection of the tender and demand.

In his complaint the appellee alleged breaches of expressed and implied warranty and fraudulent representations as to the capabilities of the dredge. By an amendment he alleged as an alternative to the fraud count that the parties had been mistaken in their belief as to the operations of which the dredge was capable, and thus there was a mutual mistake which prevented the formation of a con-

tract. The appellee sought damages of over $29,000, representing the total of principal and interest paid the appellant and expenses incurred in attempting to operate the dredge. In the alternative, the appellee asked for rescission and restitution of all moneys expended by him in reliance on the contract. The appellant answered denying the claims of the appellee and counterclaiming for the unpaid balance.

■■ The district court found that:

"At the time the dredge was sold by the defendant to the plaintiff, the dredge was not capable of performing sweep dredging operations in shallow water, unless it was modified extensively. Defendant had built the dredge and knew the purpose for which it was designed and adapted. None of the defendant's officers or employees knew that plaintiff intended to use the dredge for shallow sweep dredging operations. Gier [an employee of the appellant who talked with the appellee or one of his employees by telephone] mistakenly assumed that O'Meara intended to use the dredge within its designed capabilities.

"At the time the plaintiff purchased this dredge he mistakenly believed that the dredge was capable without modification of performing sweep dredging operations in shallow water."

The court further found that the market value of the dredge on the date of sale was $24,500, and that the unpaid balance on the note given for part of the purchase price was $10,500. Upon its findings the court concluded that:

"The mistake that existed on the part of both plaintiff and defendant with respect to the capabilities of the subject dredge is sufficient to and does constitute mutual mistake, and the plaintiff is entitled to recover the

damages he has suffered as a result thereof."

These damages were found to be "equal to the balance due on the purchase price" plus interest, and were assessed by cancellation of the note and chattel mortgage and vesting title to the barge in the appellee free from any encumbrance in favor of the appellant. The court also concluded that the appellee was "not entitled to rescission of this contract." Further findings and conclusions, which are not challenged in this Court, eliminate any considerations of fraud or breach of expressed or implied warranties. The judgment for damages rests entirely upon the conclusion of mutual mistake.[2] The district court's conclusion that the parties were mutually mistaken "with respect to the capabilities of the subject dredge" is not supported by its findings. "A mutual mistake is one common to both parties to the contract, each laboring under the same misconception." St. Paul Fire & Marine Insurance Co. v. Culwell, Tex.Com.App., 62 S.W.2d 100; Hayman v. Dowda, Tex.Civ.App., 233 S.W.2d 466; Bryan v. Dallas National Bank, Tex.Civ.App., 135 S.W.2d 249; 58 C.J.S. Mistake, p. 832. The appellee's mistake in believing that the dredge was capable, without modification, of performing sweep dredging was not a mistake shared by the appellant, who had designed and built the dredge for use in trenching operations and knew its capabilities. The mistake on the part of the appellant's employee in assuming that the appellee intended to use the dredge within its designed capabilities was certainly not one shared by the appellee, who acquired the dredge for use in sweep dredging operations. The appellee alone was mistaken in assuming that the dredge was adapted, without modification, to the use he had in mind.

■ The appellee insists that even if the findings do not support a conclusion of mutual mistake, he is entitled to re-

2. The disposition of this appeal does not require a review of the district court's action in awarding damages as a remedy

for mutual mistake rather than granting rescission and attempting restoration of the status quo ante.

lief under the well-established doctrine that knowledge by one party to a contract that the other is laboring under a mistake concerning the subject matter of the contract renders it voidable by the mistaken party.[3] See 3 Corbin, Contracts 692, § 610. As a predicate to this contention, the appellee urges that the trial court erred in finding that "None of defendant's officers or employees knew that plaintiff intended to use the dredge for shallow sweep dredging operations." Moreover, the appellee contends that the appellant's knowledge of his intended use of the dredge was conclusively established by the testimony of two of the appellant's employees, because, on the authority of Griffin v. Superior Insurance Co., 161 Tex. 195, 338 S.W.2d 415, this testimony constitutes admissions, conclusive against the appellant. In the Griffin case, it was held that a party's testimony must be "deliberate, clear and unequivocal" before it is conclusive against him. The testimony on which the appellee relies falls short of being "clear and unequivocal." If the statement of one witness were taken as conclusive, it would not establish that he knew the appellee intended to use the

dredge as a sweep dredge,[4] and the other witness spoke with incertitude.[5] The testimony is not conclusive and is only one factor to be considered by the finder of facts. See 9 Wigmore, Evidence (3d Ed.) 597, § 2594a.

There is a conflict in the evidence on the question of the appellant's knowledge of the appellee's intended use, and it cannot be held that the district court's finding is clearly erroneous. Smith v. United States, 5th Cir. 1961, 287 F.2d 299; Levine v. Johnson, 5th Cir. 1961, 287 F.2d 623; Horton v. U. S. Steel Corp., 5th Cir. 1961, 286 F.2d 710. It is to be noted that the trial court before whom the appellee testified, did not credit his testimony that he had made a telephone call in which, he said, he personally informed an employee of the appellant of his plans for the use of the dredge.

■■ The appellee makes a further contention that when he purchased the dredge he was laboring under a mistake so grave that allowing the sale to stand would be unconscionable. The ground urged is one which has apparently been recognized in some circumstances. Edwards v. Trinity & B. V. R. Co., 54 Tex.

3. The appellee does not complain of the district court's conclusion that he was not entitled to rescission. He urges, without citation of authority, that the relief to which he is entitled is by way of damages.

4. Gier, the appellant's shop foreman, testified:
"Q. Did Mr. O'Meara in the telephone conversation tell you what business he was in?
"A. No, he didn't.
"Q. He didn't. Mr. Gier, I suppose you have already answered this. Did he say what he wanted the dredge for?
* * * * * *
"Q. Now, did he [Kennedy] discuss with you what the dredge was going to be used for?
"A. Other than he just said they was going to pump some channels out for some oil wells. That's all he said. He didn't tell me how deep or how wide or anything."

5. Smith, the appellant's office manager, testified:

"Q. * * * Did you all discuss anything about the dredge itself?
"A. No, not that I recall.
"Q. In other words—
"A. I do vaguely remember him [Kennedy] mentioning to me that O'Meara had an island over there and had some oil wells on it. He was going to use this dredge to—they had been hiring someone else to do the dredging into well locations. and that's what he intended using this one for, to dredge into his well locations, and I don't remember now how much he said it cost, but, as well as I remember, it was rather expensive for a subcontractor just to dredge back to one well location, but by owning their own dredge they would have a considerable saving there.
"Q. In other words, he said they had to dredge out a channel so their drilling barge could get by?
"A. Yes. So they could get the drilling barge or equipment in there. There wasn't any roads there. That's the impression I got."

Civ.App. 334, 118 S.W. 572; 13 Tex.Jur. 2d 481, Contracts § 257; Annot., 59 A. L.R. 809. However, the Texas courts have held that when unilateral mistake is asserted as a ground for relief, the care which the mistaken complainant exercised or failed to exercise in connection with the transaction sought to be avoided is a factor for consideration. Wheeler v. Holloway, Tex.Com.App. 276 S.W. 653; Ebberts v. Carpenter Production Co., Tex.Civ.App., 256 S.W.2d 601; American Maid Flour Mills v. Lucia, Tex.Civ.App., 285 S.W. 641; Cole v. Kjellberg, Tex. Civ.App., 141 S.W. 120; Edwards v. Trinity & B. V. R. Co., supra; 13 Tex. Jur.2d 482, Contracts § 258. It has been stated that "though a court of equity will relieve against mistake, it will not assist a man whose condition is attributable to the want of due diligence which may be fairly expected from a reasonable person." American Maid Flour Mills v. Lucia, supra. This is consistent with the general rule of equity that when a person does not avail himself of an opportunity to gain knowledge of the facts, he will not be relieved of the consequences of acting upon supposition. Annot., 1 A.L.R.2d 9, 89; see 30 C.J.S. Equity § 47, p. 376. Whether the mistaken party's negligence will preclude relief depends to a great extent upon the circumstances in each instance. Edwards v. Trinity & B. V. R. Co., supra.

■ The appellee saw fit to purchase the dredge subject to inspection, yet he sent an employee to inspect it who he knew had no experience with or knowledge of dredging equipment. It was found that someone familiar with such equipment could have seen that the dredge was then incapable of performing channel type dredging. Although, according to his own testimony, the appellee was conscious of his own lack of knowledge concerning dredges, he took no steps, prior to purchase, to learn if the dredge which he saw pictured and described in some detail in the advertisement, was suited to his purpose. Admittedly he did not even inquire as to the use the appellant had made or intended to make of the dredge, and the district court found that he did not disclose to the appellant the use he intended to make of the dredge. The finding is supported by evidence. The appellee did not attempt to obtain any sort of warranty as to the dredge's capabilities. The only conclusion possible is that the appellee exercised no diligence, prior to the purchase, in determining the uses to which the dredge might be put. Had he sent a qualified person, such as the naval architect whom he later employed, to inspect the dredge he would have learned that it was not what he wanted, or had even made inquiry, he would have been informed as to the truth or have had a cause of action for misrepresentation if he had been given misinformation and relied upon it. The appellee chose to act on assumption rather than upon inquiry or information obtained by investigation, and, having learned his assumption was wrong, he asks to be released from the resulting consequences on the ground that, because of his mistaken assumption, it would be unconscionable to allow the sale to stand. The appellee seeks this, although the court has found that the appellant was not guilty of any misrepresentation or fault in connection with the transaction.

The appellant is in the same position as the party seeking relief on the grounds of mistake in Wheeler v. Holloway, supra, and the same result must follow. In the Wheeler case it was held that relief should be denied where the mistaken party exercised "no diligence whatever" in ascertaining the readily accessible facts before he entered into a contract.

The appellee should have taken nothing on his claim; therefore, it is unnecessary to consider the question raised by the cross-appeal. The other questions raised by the appellant need not be considered. The case must be reversed and remanded for further proceeding consistent with what we have here held.

Reversed and remanded.