**Glenn E. VAUGHAN, Trustee, et al.,
Appellants,**

**v.**

**CROWN PLUMBING & SEWER SERVICE,
INCORPORATED, Appellee.**

No. 16469.

Court of Civil Appeals of Texas,
Houston (1st Dist.).

April 3, 1975.

Rehearing Denied May 22, 1975.

---

Richard W. Vaughan, E. Patrick Chaudoir, Jr., Houston, for appellants.

Mullins, Box & Parish, James T. Mullins, Houston, for appellee.

EVANS, Justice.

This is an appeal from a temporary injunction, enjoining a deed of trust foreclosure sale.

Crown Plumbing & Sewer Service, Inc. purchased an apartment project from David G. Gayne on May 13, 1974 for a total purchase price of $531,705.08. This sale was subject to, but not in assumption of certain indebtedness having an aggregate unpaid balance of $340,565.17, and secured by liens on the property as follows:

(1) a first lien indebtedness evidenced by promissory note in the principal amount of $400,000.00 payable to Guardian Life Insurance Company of America having an unpaid balance of $276,302.31;

(2) a second lien indebtedness evidence by 24 promissory notes in original aggregate principal amount of $93,879.10 payable to United Properties having an unpaid balance of $38,514.50;

(3) a third lien indebtedness evidenced by two promissory notes, one payable to Richard W. Vaughan in the principal amount of $22,456.23, and the second, of equal dignity, payable to Fred Sullins and Anthony Miglicco in the principal amount of $20,797.28 having an unpaid balance as follows:

Vaughan note       $25,748.36
Sullins-Miglicco
     note              23,790.71

The Vaughan note and the Sullins-Miglicco note were each dated February 1, 1972, recited accrual of interest at the rate of 8% per annum and provided that both principal and interest would be payable in monthly installments of $250.00 each, commencing February 1, 1974.

At the time of the sale, the May installment on the Vaughan note in the amount of $250.00 had not been paid. Vaughan, however, being Gayne's attorney, was involved in the sales transaction and knew such payment to be overdue. The May installment was subsequently paid on May 17, 1974, after the closing data on the sale had been gathered together, and subsequent installments on the note were paid as follows:

The $250.00 June installment was paid June 3, 1974, and negotiated through the bank on June 19, 1974;

The July installment was paid July 1, 1974 and negotiated on July 22, 1974;

The August payment was made August 5, 1974 and negotiated August 23, 1974.

September 1, 1974 fell on a Sunday and the following day, September 2, was Labor Day. On September 4, 1974, no payment of the September installment having been made, Vaughan delivered to Gayne, with copy to Crown, letter notification that he was accelerating maturity on the note and demanding full payment of its principal amount ($22,456.23) and accrued interest in the amount of $4,636.45. On September 5, 1974 Crown tendered cashier's check to Vaughan for the amount of the September installment ($250.00) but this tender was refused.

On September 5, 1974 Crown also made payment on the Sullins-Miglicco note in the aggregate amount of $250.00 and such payments were accepted. However, by letter dated September 9, 1974 Sullins and Miglicco advised Crown that they had received notice that the Vaughan note had been accelerated and that they, therefore, accelerated maturity of their note under the provision authorizing them to do so upon default of the Vaughan note.

On September 9, 1974 Glenn E. Vaughan, the trustee under the subject deed of trust, posted notice of foreclosure sale and this suit by Crown seeking to enjoin such sale was filed on September 27, 1974. A temporary restraining order was issued and hearing set for October 3, 1974, but such matter was reset due to lack of service on Sullins and Miglicco. Crown, by letters dated October 3, 1974, tendered the September and October payments due on the Vaughan note, which were refused, and also the October installment due on the Sullins and Miglicco note. The payment mailed by Crown to Sullins was not returned but the payment to Miglicco was returned to Crown by his letter of October 23, 1974.

On October 14, 1974 Glenn E. Vaughan, Trustee, posted three additional notices of trustee's sale which specified that the sale would be held on November 5, 1974. One of these notices was based upon the alleged default in the Vaughan and Sullins-Miglicco notes. A second notice was based upon an alleged default in a promissory note in the amount of $11,726.53 dated July 29, 1974 from Gayne to Richard W. Vaughan and a third notice was based upon an account receivable allegedly due by Gayne to Vaughan as of September 1, 1974, in the amount of $2429.93, for professional services rendered.

On November 1, 1974 the trial court, sitting without a jury, temporarily enjoined defendants, Glenn E. Vaughan, Trustee, Richard W. Vaughan, Anthony Miglicco and Fred L. Sullins from foreclosing on Crown's property, pending final hearing, for any default occurring or allegedly occurring prior to October 1, 1974.

The Vaughan note contained a provision for the optional acceleration of the entire indebtedness upon default in the punctual payment of either principal or interest and also provided that each maker, surety and endorser expressly waived all notice, demands for payment, presentment for payment, notices of intention to accelerate maturity and notice of protest. It did not provide, however, that the holder's failure to exercise the option to accelerate upon default would not constitute a waiver of the exercise of the same right upon any subsequent default.

In Bischoff v. Rearick, 232 S.W.2d 174 (Tex.Civ.App.—El Paso 1950, writ ref'd n. r. e.), a vendor's lien note had been executed by Rearick and Witz, as makers, in the principal amount of $2850.00 dated September 1, 1948 made payable to Mortgage Investment Company of El Paso, and secured by second lien on certain property. The note was endorsed by Bischoff and was assumed by Chotas. The note provided for payment in monthly installments of $34.63 each, and payments were made each month (but not on the due dates) from the fall of 1948 through June, 1949. Chotas was transferred to Japan in July, 1949 and he left the property in the hands of Rearick to collect rents and pay the installments due on the note. Rearick made payment in July, August and September and he believed he was making the payments on the first of the month when they were due. However, on October 7, 1949, when Bischoff, the endorser on the note, paid off the debt to Mortgage Investment Company and the pledged note was returned to him, he discovered that the $34.-63 installment due on October 1 had not been paid. He took the note to his attorney who immediately sent a letter to Rearick giving notice of acceleration. Rearick received the letter on October 10 and immediately went to the attorney's office and made tender of the October installment but the tender was refused. The trial court

found that Bischoff was not concerned about the lateness of the payment but merely used that reason as a basis for maturing the debt. Affirming the trial court's judgment that Bischoff take nothing, the El Paso Court of Civil Appeals, at page 176 said:

"The exercise of the remedy works a forfeiture of the right to pay over a period of time. In the instant case of some eight years. The provision for acceleration of the time of payment is a privilege running in favor of the holder and in many instances a valuable privilege. It is optional with the holder whether he will exercise it or not. The accelerated clause provides against the suffering of obvious hardships by holder of a note or lien. Without the privilege a holder might be required to bring a series of suits, or wait an unreasonable time to collect his debt in cases, for example, where a vendee abandoned premises and defaulted in installments of principal and interest, or one or the other. It might also serve, and in many instances does, to protect the debt or lien in case of wilful or avoidable default. On the other hand, it may be used unjustly and oppressively. We think such is the case here."

■ The trial court could have concluded from the circumstances of this case that there was an issue presented as to whether Vaughan's conduct in permitting prior monthly payments to be made late, without objection to the new owner, Crown, constituted a waiver of his optional right of acceleration of maturity with respect to installments subsequently coming due, absent some notice that short delays were objectionable and that future installments should be timely paid.

"An optional acceleration of maturity of a note can be waived by the acts and words of one who holds right of election, as was held by our Supreme Court in San Antonio Real Estate Bldg. & Loan Ass'n v. Stewart, 94 Tex. 441, 61

S.W. 386, 389, 86 Am.St.Rep. 861, as follows: 'But, aside from this, while neither party by his separate action or nonaction could impair the rights of the other, each could waive his own rights as they accrued from the default in payment of an installment so as to estop him from relying on such default. To accomplish this, it would only be necessary that each should so act as to justify the other in believing and acting upon the belief that the effect of the failure to pay an installment was to be disregarded, and that the contract should stand as if there had been no default. The principle of estoppel by waiver would, we think, have proper application in such a case.' " Diamond v. Hodges, 58 S.W.2d 187, 188 (Tex.Civ.App.—Dallas 1933, no writ).

In the case before us, late payments were made and accepted by Vaughan for several months prior to the due date of the September installment. Thus we do not have a case where there was a mere indulgence by the holder after default, nor was there any contractual provision that the holder's conduct in accepting payments after default would not constitute a waiver of his right of acceleration in the event there should be default in prompt payment of any subsequent installment, as in Whalen v. Etheridge, 428 S.W.2d 824, 829 (Tex. Civ.App.—San Antonio 1968, writ ref'd n. r. e.).

■ It has been stated by this court and others that "The exercise of the power of acceleration is a harsh remedy and deserves close scrutiny." Hiller v. Prosper Tex. Inc., 437 S.W.2d 412, 415 (Tex.Civ. App.—Houston [1st] 1969, no writ), citing Parker v. Mazur, 13 S.W.2d 174 (Tex.Civ. App.—San Antonio 1928, err. dism'd) and Bischoff v. Rearick, supra. As stated in Hiller, equity may intervene to preclude acceleration where a delay in payment of an installment is due to the result of accident, mistake or inequitable conduct of the creditor himself. See also Jernigan v. O'Brien, 303 S.W.2d 515 (Tex.Civ.App.— Austin 1957, no writ); Parkview General

Hospital, Inc. v. Ashmore, 462 S.W.2d 360 (Tex.Civ.App.—Corpus Christi 1970, writ ref'd n. r. e.); Longbotham v. Ley, 47 S. W.2d 1109 (Tex.Civ.App.—Galveston 1932, writ ref'd).

We cannot agree with Vaughan's argument that the fact that the property is worth "far more" than the amount of the late installment is immaterial. In the exercise of its equitable powers, the trial court could properly have considered the great disparity between the holder's loss of use of the overdue installment and the hardship which would result to the owner of the property if immediate foreclosure were permitted.

█ These matters, together with the circumstances showing the manner in which prior payments had been made and accepted, and the relationship and conduct of the parties both prior to and after the attempt to accelerate maturity, were properly considered by the trial court in determining whether there were issuable facts requiring maintenance of the status quo pending final hearing. Circumstances which tend to show that a holder has exercised the optional right of acceleration, not for the purpose of protecting his debt or preserving the security, but for the purpose of coercing the maker to pay the entire debt or forfeit his property, is relevant with respect to these equitable considerations. Brown v. Hewitt, 143 S.W.2d 223, 227 (Tex.Civ.App.—Galveston 1940, error dism'd); Bischoff v. Rearick, supra, 232 S.W.2d at p. 175.

We next consider Vaughan's contention that the foreclosure under the deed of trust was appropriate because of Gayne's alleged default in other indebtedness due to Vaughan, and also because of Gayne's insolvency.

As previously stated, Gayne executed a note payable to Vaughan dated July 20, 1974 in the principal sum of $11,726.53. This note was payable in installments of approximately $3908.00 each, the first becoming due on August 29, 1974 and the remaining two installments being due on the same day of September and October, 1974. The note recited that it was secured by deed of trust dated February 1, 1972 from Gayne to Glenn E. Vaughan, Trustee. The first installment of $3908.85 was paid and accepted on September 18, 1974 but apparently no subsequent installments had been paid at the time of the hearing on the temporary injunction in November, 1974. Vaughan also contends that at the time of the hearing, Gayne was indebted to him for miscellaneous legal services in the aggregate amount of $2429.93 as evidenced by various statements dated August 1, 1974, and September 1, 1974.

Vaughan contends that Gayne's default in the payment of these items of indebtedness, which admittedly were not in evidence at the time of Gayne's sale to Crown, constituted a legal basis for foreclosure under the terms of the deed of trust. These alleged debts were not, of course, mentioned in the February 8, 1972 deed of trust, and in fact were not made known to Crown until after the attempted acceleration of Vaughan's note. However, Vaughan contends that such debts are secured by a typewritten provision in the deed of trust to the effect that its purpose is to secure "the payment of all other indebtedness of the maker of said note to the beneficiaries or any of them presently existing or which may in any manner or means hereafter be incurred by the maker of said note and evidenced in any manner whatsoever, either by notes, advances, overdrafts, bookkeeping entries, accounts receivable or any other method or means . . . and including any further loans and advancements made by any of said beneficiaries to the maker of said note under the provisions hereof."

█ Mortgage clauses which secure future indebtedness "apply only to those debts which were reasonably within the contemplation of the parties." Wood v. Parker Square State Bank, 400 S.W.2d 898, 901 (Tex.1966); Moss v. Hipp, 387 S.W.2d 656 (Tex.1965). Although the

deed of trust may have placed Crown on notice of debts owed by Gayne to Vaughan which were contracted after its execution, it was certainly not notice to Crown and did not secure the alleged indebtedness owed by Gayne to Vaughan which came into existence after the date of the sale of the property. We also hold that Gayne's insolvency at the time of the hearing on November 1, 1974 did not establish any legal basis for foreclosure precluding the trial court's entry of temporary injunction. The evidence does not reflect when this condition first existed and the notices of the trustee's sale do not state this to be a basis for the foreclosure. Nor is there any provision in the deed of trust which specifies the mortgagee may foreclose upon the occurrence of a grantor's insolvency after he has parted with title to the property, or upon the mortgagee's determination that he is insecure in the prospect of payment or performance. See Sec. 1.208 Texas Business & Commerce Code, V.T.C.A.

In reviewing the documentary exhibits in the record, we note an additional basis upon which the trial court's action in granting temporary injunction may be sustained. The deed of trust from Gayne to Glenn E. Vaughan, Trustee, is dated February 8, 1972 and recites that the Vaughan and the Miglicco and Sullins notes secured thereby are "of even date." The two notes exhibited in the record and referred to in the acceleration notices are both dated February 1, 1972. There appears, therefore, to be a discrepancy between the dates referred to in the deed of trust and those referred to in the acceleration notices and the trial court may have concluded that an issuable fact existed as to whether Crown was upon notice of the terms of the notes which constituted the basis for the attempted foreclosure under the deed of trust. Waites v. Osborne, 66 Tex. 648, 2 S.W. 665 (1886).

The trial court has broad discretion in determining whether a temporary injunction should issue in a case such as this to maintain the status quo pending final hearing. Diamond v. Hodges, 58 S.W.2d 187 (Tex.Civ.App.—Dallas 1933, no writ). In our opinion the trial court acted properly and well within the bounds of its discretion.

Affirmed.