**The UNION LABOR LIFE INSURANCE COMPANY, Plaintiff,**

v.

**TEN GALLON HAT ASSOCIATES 1500 Hemig Realty Corp., David J. Seltzer, Eric H. Seltzer, and Philip Seltzer, Defendants.**

Civ. A. No. 91–0788.

United States District Court, E.D. Pennsylvania.

March 24, 1992.

---

Douglas F. Johnson, David Bacon, Archer & Greiner, P.C., Philadelphia, Pa., for plaintiff.

H. Robert Fiebach, Benjamin J. Naitove, Wolf, Block, Schorr and Solis–Cohen, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

GAWTHROP, District Judge.

Plaintiff brings this action in diversity to recover on a promissory note and security agreement signed by the defendants. Plaintiff accelerated the note after defendants defaulted twice in making payments and after plaintiff sent a notice of intent to accelerate, giving defendants an opportunity to cure. Although there is really no factual dispute that plaintiff complied with all the terms of the note and applicable case law before demanding payment, defendants ask the court to apply equitable principles to prevent acceleration of the note. Plaintiff has now moved for Summary Judgment under Fed.R.Civ.P. 56. Finding that no genuine issues of material fact exist and that plaintiff is entitled to judgment as a matter of law, I shall grant plaintiff's motion, upon the following reasoning.

## DISCUSSION

1. *Standard for Summary Judgment Motion*

Under Fed.R.Civ.P. 56(c), summary judgment shall be granted if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment, the burden is on the moving party to show that there is no genuine issue of material fact, and "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). However, once the moving party has met its initial burden, Rule 56(e) requires the non-moving party to go beyond the pleadings in setting forth specific facts showing that there is a genuine issue for trial. *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986).

### 2. *Undisputed Facts*

The majority of the facts in this case are undisputed, having begun in Texas, more than a decade ago. In 1981, Ten Gallon Hat, a Texas limited partnership, of whom David Seltzer, Eric Seltzer, and 1500 Hemig Realty Corp. were the sole general partners, borrowed money from the Alamo National Bank to purchase property in Texas and finance the construction of a building on that property. The 4.5 million dollar promissory note on that loan was executed by Ten Gallon Hat and Philip Seltzer, who also guaranteed the loan. The note was transferred and assigned to the Union Labor Life Insurance Company ("ULLICO").

By 1988, Ten Gallon Hat and P. Seltzer had defaulted on the loan with several delinquent and unpaid installments past due. ULLICO accelerated the note and instituted suit in Texas state court to collect on it. That case was settled in 1989, and the settlement agreement, attached to plaintiff's reply brief as Exhibit A, makes it clear in the record that defendants did default on that loan (admitting it in the recitals of the Agreement). The settlement provided for the sale of a piece of the defendants' properties, with the proceeds of about 3 million dollars going toward their debt, and in order to satisfy the rest of their obligation, the defendants executed another promissory note to ULLICO for the sum of 1 million dollars, the note at issue today. The note was signed by all the Seltzers in their individual capacities and on behalf of Ten Gallon Hat and Hemig.

On January 1, 1990, defendants made the first payment of $6,250 on the note. As the payments were to be made quarterly, the next payment was due on April 1, 1990. That payment was not made. When the third payment came due on July 1, 1990, defendants still made no payment. On August 15, 1990 plaintiff sent defendants, each individually, and defendants' counsel a formal notice of default and notice of intent to accelerate the note. The notice gave defendants until September 4, 1990 to cure their default, but stated that if they did not cure by that date, plaintiff would accelerate the note and demand payment. Defendants admit that they received that notice on August 17, 1990. (Affidavit of Stephen Lewis, counsel for defendants, ¶ 6). By September 4, 1990, plaintiff had received no response to its August 15th notice: no payment, no telephone call, no letter. As a result, on September 7, 1990, plaintiff served on defendants and defendants' counsel a notice of acceleration, declaring the full maturity of the note due and owing.

After receiving the September 7th letter, defendant Philip Seltzer contacted Mr. Harrs, the Vice-president of ULLICO, and told him that the installments were not paid because of clerical error and mistake. He offered to pay the amount of the two installments plus the October payment in advance. By a September 23, 1990, letter, Mr. Harrs rejected Seltzer's offer, insisting on strict compliance with the note. Plaintiff filed suit on February 5, 1991 to collect the amount outstanding on the note, plus interest and attorney's fees as provided in the note. Another offer to pay all unaccelerated accrued installments on the note, conditioned upon reinstatement of the note made by defendants' counsel on June 24, 1991, was likewise rejected.

### 3. *Defendants' Evidence by Affidavit*

Defendants submit an affidavit from Stephen Lewis, general counsel to the defendants, in which he explains that after he received plaintiff's notice of acceleration on about September 9, 1990, he and others "discovered that the checks which had been issued for those payments had been placed in a drawer by a clerk and never sent out. We also discovered the account ledger in which the April and July, 1990, installments were marked as paid on the dates

that the checks had been issued." (Lewis Affidavit ¶ 9). Mr. Lewis acknowledges receipt of the notice of intent to accelerate letter of August 15th, but claims that he sent the letter to the head of the accounting department with instructions to tender the appropriate amount within the cure period. (Lewis Affidavit ¶ 7). Evidently, unbeknownst to anyone, the head of the accounting department, Jeffrey Bockol, was on vacation from August 17 to September 3, 1990, and no one was directed to open or check his mail in his absence. He came back into the office on September 4th, the deadline set by plaintiff's notice-of-intent-to-accelerate letter for defendants' to cure their default, for only about one and three-quarter hours, during which time he did not review his mail. (Bockol Affidavit ¶¶ 2, 3). Drawing all inferences in favor of defendants, I take as true the statements made in defendants' affidavits. Plaintiff's claim, however, that even if defendants' version of the course of events explaining the default in payments is true, plaintiff is still entitled to judgment as a matter of law.

4. *Defendants' Equity Arguments*

■ According to the terms of the note at issue and by agreement of the parties, Texas law governs this case. Under Texas law, plaintiff, in taking its steps toward acceleration, did everything required of it under the note and the applicable caselaw. A creditor must do three things before it can accelerate a note and demand all amounts due and owing.

First, the creditor must notify the debtor that it unequivocally intends to accelerate the note; and second, the creditor must give the debtor a reasonable opportunity to cure the default. Here, it is undisputed that the ULLICO's August 15th letter provided the defendants with ULLICO's notice of unequivocal intent to accelerate and twenty days to cure the default. Defendants do not claim that twenty days is not a reasonable time within which defendants could have provided the unpaid installments.

Third, the creditor must send a notice that the note has been accelerated, and declare the entire debt due. In the case at bar, ULLICO's letter of September 7th, 1991, met the third requirement. A creditor's fulfillment of these three steps cuts off defendants' right to cure their default and allows the creditor to take affirmative action to recover the amount due. *Ogden v. Gibraltar Savings Association,* 640 S.W.2d 232 (Tex.1982); *B.W. Cruce, Jr. v. Eureka Life Insurance Company of America,* 696 S.W.2d 656 (Tex.Ct.App. 1985); *Hunt v. Jefferson Savings & Loan Assoc.,* 756 S.W.2d 762 (Tex.Civ.App.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1532, 103 L.Ed.2d 837 (1989).

■ Although defendants admit that plaintiff complied with all the formal requirements for accelerating a note, they claim that equity considerations should control and relieve them from the harsh effects an acceleration of the note would bring. Defendants claim that material issues of fact exist as to their defenses in equity. I have examined the Texas cases applying principles of equity to contractual relations, especially that of the borrower and lender, and find that even with those principles applied to the case at bar, plaintiff is entitled to judgment as a matter of law.

a. Defendants' default and failure to cure were the results of clerical mistake and accident

■ Equity will intervene to prevent acceleration of a note when there has been a mutual mistake of the parties, *see Howard v. Young,* 210 S.W.2d 241 (Tex.Civ. App.1948), or when the default of the debtor is caused by mistake, accident, or inequitable conduct of the *creditor* himself. (Emphasis added). *Vaughan v. Crown Plumbing & Sewer Service, Inc.,* 523 S.W.2d 72 (Tex.Civ.App.1975); *Davis v. Pletcher,* 727 S.W.2d 29 (Tex.Ct.App.1987). When a unilateral mistake is asserted as a ground for relief, the care which the mistaken complainant exercised or failed to exercise in connection with the transaction sought to be avoided is a factor for consid-

eration. *Anderson Brothers Construction v. O'Meara*, 306 F.2d 672, 677 (5th Cir.1962) (applying Texas law). "Though a court of equity will relieve against mistake, it will not assist a man whose condition is attributable to the want of due diligence which maybe fairly expected from a reasonable person." *Id.* (quoting *American Maid Flour Mills v. Lucia*, 285 S.W. 641 (Tex.Civ.App.1926)); *Oualline v. Champion Paper and Fibre Co.*, 206 S.W.2d 267 (Tex.Civ.App.1947). If a mistake occurred without any fraud or falsehood, when the means of inquiry are equally open to both parties, no relief can be granted on account of the mistake alone. *Id.* at 271.

The unilateral mistake on the part of the defendants at bar was one that could easily have been avoided had they or their general counsel exercised the due diligence of a reasonable person. After being given favorable terms under which they could repay a very large debt to ULLICO, a debt that might have ruined them if they had not worked it out as a result of the settlement agreement of 1989, defendants' counsel directed defendants' accounting department to make timely payments. He assumed his instructions would be carried out, and did not bother to check if the payments were being timely made, payments that were to be made only four times a year.

Even more importantly, after all defendants and defendants' counsel received ULLICO's notice of intent to accelerate because of two missed installments, defendants' counsel merely forwarded the letter to the head of accounting. There is no evidence in the record of what the defendants themselves did in response to this letter, if anything. No one called accounting to make sure its director received the letter and was acting on it. Defendants claim no one knew he was on vacation, and no one was even checking his mail while he was out for two weeks. No one called or contacted ULLICO to respond to the letter in any way or to check and make sure that payments to cure the default had been made. Just as the unrelieved, mistaken party in *Anderson Brothers, supra,* the defendants here "chose to act on assump-

tion rather than upon inquiry or information obtained by investigation." *Id.* at 677. It was only after receiving ULLICO's notice that the debt had been accelerated that the defendants rushed to pay the overdue amounts. This rather nonchalant response to a notice of intent to accelerate a 1 million dollar note demonstrates a lack of due diligence on the part of the defendants, the consequences of which equity will not relieve them.

b. Defendants' claim that acceleration was result of ulterior motive

Defendants argue that material issues of fact exist as to whether plaintiff had a legitimate reason to accelerate the note, or whether it did so out of an ulterior motive to get all the money now, rather than over the term of the note. Texas courts have held that

circumstances which tend to show that the holder [of a note] has exercised his option to accelerate, not for the purpose of protecting his debt or preserving the security therefor, but for the purpose of coercing the maker to pay the balance then remaining unpaid on the note, or risk foreclosure of the lien on the property securing the debt, are relevant to determining the propriety of equitable relief.

*Vaughan v. Crown Plumbing, supra* at 76; *Davis v. Pletcher, supra,* at 35.

Defendants contend that their offer to pay all unaccrued unpaid installments, tendered to plaintiff in September 1990, and June 1991, shows that the security of the loan was not impaired. They claim that the court can infer from plaintiff's refusal to accept those offers that plaintiff was not concerned with protecting the collectibility of the loan, but sought to get out of the 1989 settlement agreement by maturing the debt. While I must draw all justifiable inferences in favor of the defendants in considering this motion for summary judgment, this inference of bad motive is not a justifiable one from the record. Plaintiff did not jump at the chance to accelerate the loan without giving defendants plenty of time to cure their defaults. With the back-

ground of the defendants' failure to pay their obligations in 1988, plaintiff still waited for two defaults and sent a notice to cure to all defendants and counsel.

Proper notice that the debt has been accelerated cuts off debtor's right to cure the default. *Ogden v. Gibraltar Savings Association, supra* at 234. The court in *Brown v. Avemco Investment Corp.*, 603 F.2d 1367 (9th Cir.1979) (applying Texas law) found that "[a] default in payment ... raises doubts about future full payment." *Id.* at 1380. In finding that equitable principles of good faith may apply to a lender who, at its option, accelerates a note after default, the court placed the burden of proving lack of good faith on the party against whom the acceleration was exercised. Here, defendants have not met their burden of producing any material issues of fact tending to show that plaintiff's accelerated the loan for illegitimate motives. There is nothing in the record beyond allegations and "mere metaphysical doubt," *Matsushita, supra* 475 U.S. at 586, 106 S.Ct. at 1355, that plaintiff accelerated the loan to extricate itself from a settlement agreement. Equitable principles will not interfere with plaintiff's contractual right to accelerate the note when the defendants can point to no inequitable conduct on the part of the plaintiff, except for allegations about its refusal of offers to cure after the note had been accelerated—a right plaintiff had under Texas law.

### c. Texas cases applying equitable principles to the acceleration of notes

Texas courts, granting relief from a note that was accelerated after the debtor missed one or more payments, have found either due diligence on the part of the debtor or inequitable conduct on the part of the creditor or both. As discussed above, evidence of neither situation exists here, and the following cases are distinguishable on those important factual differences.

In *Bischoff v. Rearick*, 232 S.W.2d 174 (Tex.Civ.App.1950), the creditor, Bischoff accelerated the note, after he discovered that payments had repeatedly been made and accepted late, without first providing any notice of intent to accelerate. There was also testimony in the record from a partner of the debtor that Bischoff had told him that he had matured the debt because he had an opportunity to sell the note at a discount, not because he was concerned about the late payments. The court found that the inequitable conduct on the part of the creditor deprived him of his privilege of acceleration. *Id.* at 175.

In *Winton v. Daves*, 614 S.W.2d 464 (Tex.Civ.App.1981), Daves, the debtor, after discovering he had mailed the check to the wrong address of the creditor, through no fault of his own since the creditor had not notified him of a change of address, immediately called his own attorney, the creditor's attorney, and the postmaster to remedy the problem. He redirected the payment as soon as he received it back, but the creditor accelerated the note. There was evidence in the record that the creditor, who had been in a long time feud with the debtor, had accelerated the note to force a settlement by Daves in another lawsuit then pending between them, rather than concern over the lateness of the payment. The court, finding due diligence on the part of the debtor and inequitable conduct by the creditor, relieved the debtor from acceleration of the note.

In *Vaughan v. Crown Plumbing, supra*, the debtor had consistently been a few days late in making his payments of $250.00, and the creditor had made a practice of accepting these payments late. Then, without notice of intent to accelerate or giving an opportunity to cure, the creditor suddenly accelerated the note and demanded payment, amounting to about $26,000, and he instituted foreclosure proceedings on the debtor's property worth about $500,000. The court relied on a combination of factors in coming to its decision to prevent acceleration of the note: the circumstances in which prior payments had been made and accepted, the relationship of the parties prior to and after acceleration, and the lack of notice of intent to accelerate. The court also considered the great disparity between the creditor's loss of the use of the installment, overdue by only a few days, and the great hardship it would

be to the debtor to foreclose on his property immediately.

In *Davis v. Pletcher, supra,* a suit for breach of a covenant of quantity in a deed securing a sale of property, the buyer was to make payments on a promissory note, beginning on August 1, 1982. After the closing, however, a dispute arose between the buyer and the seller as to a claim made by the buyer under a covenant of quantity. The buyer would not make the first payment due on August 1st and instead filed suit for a declaratory judgment, tendering the first payment to the court. The sellers accelerated the note, declared the entire amount due, and began foreclosure proceedings. The court found that the sellers were wrong in denying the buyer's claim, and since the sellers knew that the buyer was able and willing to pay from the beginning, evidenced by his payment of the first installment into court and his substantial investment in the property, equity intervened to prevent acceleration of the note.

### d. Disproportionate burden of acceleration compared to plaintiff's loss

Finally, defendants argue that equity should relieve them of the disproportionate burden of the accelerated 1 million dollar note because the unpaid loan installments represent a very small proportion of the total loan value. This is true, but it is true in all cases of acceleration because of defaults in loan payments. While it is proper for the court to consider such disparity in looking at equity concerns, *see Vaughan, supra* and *Davis, supra,* none of the cases cited by the defendant has held that disparity alone will relieve the debtor of the consequences of acceleration.

An acceleration clause "provides against the suffering of obvious hardships by a holder of a note or lien. Without the privilege, a holder might be required to bring a series of suits, or wait an unreasonable time to collect his debt ... It might also serve, and in many instances does, to protect the debt or lien in cases of wilful or *avoidable* default." *Bischoff v. Rearick, supra* at 176 (Emphasis added). Although a creditor might attempt to use an acceleration clause in an unjust or oppressive—and therefore, unacceptable—way, I do not find it so used in this case. The defendants at bar are sophisticated business people who have borrowed money before. They defaulted once and were given a second chance by plaintiff. They defaulted once again, and through lack of due diligence, did not act to cure that default. Since defendants have not been able to show any facts from which the court could justifiably infer any inequitable conduct on the part of plaintiff, it is inappropriate to invoke principles of equity to prevent plaintiff's use of a contractual right. Plaintiff is entitled to judgment as a matter of law.