**In re John J. WESTER & Geneva P. Wester, Debtor(s).**

**Bankruptcy No. 86–00178.**

United States Bankruptcy Court, N.D. Florida.

April 4, 1988.

Lansing J. Roy, Keystone Heights, Fla., for debtors.

## ORDER DENYING CONFIRMATION OF CHAPTER 11 PLAN

LEWIS M. KILLIAN, Jr., Bankruptcy Judge.

THIS MATTER was heard on March 3, 1988, on confirmation of the debtors' John and Geneva P. Wester's modified Second Amended Plan of Reorganization. Merchants & Southern Bank of Alachua County, (hereinafter referred to as M & S) the major secured creditor has rejected the plan and has filed its objection to confirmation. The debtors-in-possession have requested that the plan be confirmed pursuant to the provisions of § 1129(b) of the Bankruptcy Code over the objection of the bank.

This case was commenced by the debtors filing their voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 17, 1986. On June 29, 1987, following the entry of an order by this Court setting a date for the filing of a plan of reorganization, the debtors filed their first plan and disclosure statement. The plan was amended on July 30, 1987 and a Second Amended Plan of Reorganization was filed on August 27, 1987. The Disclosure Statement received approval on September 27, 1987 and hearing on confirmation of the plan was scheduled for November 5, 1987.

Merchants & Southern is the holder of a claim secured by a first mortgage on the debtors' home and 51 contiguous acres. The amount of the claim as of the date of this hearing was in excess of $123,000, exclusive of attorneys fees. The Second Amended Plan of Reorganization provided that the claim would be reamortized over a thirty (30) year period at 11% interest. It further provided that the debtors would sell off portions of the 51 acres with the sales proceeds going to the bank in exchange for releases. The bank objected and filed its ballot rejecting the plan. Two other classes failed to vote on the plan, and consequently, the November 5 hearing was continued until January 14, 1988 to enable the debtors to attempt to resolve their differences with the non-accepting classes. At the January 14 hearing, the debtors had obtained acceptances from all classes except for that consisting of M & S. The debtors had not made any request under § 1129(b) for confirmation notwithstanding the failure of all impaired classes to accept the plan, and accordingly, the hearing was once again continued in order to deal with M & S under § 1129(b).

Hearing was scheduled for March 2, 1988, and the debtors filed their § 1129(b) motion on February 24th. On February 25th, the debtors filed another modification to their plan to deal specifically with the M & S claim. This modification provided for an interest rate of twelve (12%) percent on the reamortized debt and set forth a detailed plan for sales of five (5) acre tracts with releases to be given by M & S at release prices of the larger of $2000 per acre or the net sales proceeds received for the tracts. At the hearing on March 2nd, the debtors presented yet another proposal regarding sales of the property. This proposal provided for the debtors to sell five (5) acre parcels owned by the debtor John Wester's mother with the proceeds from such sales being paid to the bank. The debtors would then deed to the mother, free and clear of the bank's mortgage, similar sized tracts of the debtors' property which is contiguous to property owned by the mother.

The position of M & S at the hearing was that the plan could not be confirmed because it was not feasible and that it did not provide the bank with the "indubitable equivalent" of its claim.

The evidence presented, together with the monthly operating reports filed by the debtors, reflects that John Wester is employed as an electrician. During most of the time that this case has been pending, he has been working on jobs in New York state earning wages considerably higher than those he can earn in the Alachua County Florida area. During that period, he was able to accumulate in excess of $9,000 in the bank. However, during that period, no payments were being made on the M & S mortgage. In January, 1988, pursuant to an agreement, the debtors commenced making monthly payments to M & S in the amount of $1,300. Mr. Wester returned to Florida from New York in December of 1987. Since Mr. Wester's return to Florida and his commencement of payments to M & S, his cash on hand has diminished to the sum of $2,350.70 as of the end of February. A review of his income and expenses for the months of December 1987—February 1988 indicates that on average, his expenses exceed his income by approximately $450 per month. Mrs. Wester is not employed. Thus, it appears that the debtors would not be able to make the payments provided for under the plan.

At hearing, the debtors' counsel acknowledged that success of the plan would be dependent on the debtors ability to reduce the debt by selling five (5) acre parcels and obtaining releases from M & S. The debtor, John Wester, however, has no experience at all in the sale and development of real estate. While he testified that he had discussed selling the property with various realtors, he had not developed any plans for dividing and developing the property, and had not attempted to list any of it for sale. He claimed that he was negotiating a sale of one of his mother's parcels but did not produce any written evidence of a pending contract for sale. M & S objected to being forced to release any portions of its collateral under the conditions set forth by

the debtors. In particular, M & S opposed the subdivision of its collateral without first seeing a comprehensive development plan for the property to include plans for roads, sewers, utilities, and site engineering. It was also concerned with the negative effect on the value of its remaining collateral if there were no building restrictions placed on the tracts it might release and mobile homes were placed thereon.

Merchants & Southern presented testimony of a real estate appraiser who had performed an appraisal of the property in July of 1987. He testified that when he had done his appraisal, the total value of the property was $185,000, with $122,400 of that attributable to the land. Since the appraisal, he had visited the property again, and his testimony was that the appearance of the land had deteriorated through lack of maintenance and subsequently had lost marketability. He felt that the fair market value had dropped from an average of $2,400 per acre to $2,250 per acre. His opinion regarding marketing possibilities for the five (5) acre tracts was that it would take two to five years to sell them if favorable financing were not provided. The debtors did not present any evidence to rebut that of the bank's appraiser.

■ Under the provisions of § 1129(b), the Court can confirm a Chapter 11 plan notwithstanding the lack of acceptance by all classes of impaired claims only if the treatment of such classes under the plan is "fair and equitable." Section 1129(b)(2)(A) defines "fair and equitable" for classes of secured claims as follows:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totalling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holders interest in the estate's interest in such property;

(ii) for the sale, subject to section 363(K) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or

(iii) for the realization by such holders of the indubitable equivalence of such claims.

In this case, the plan requires that M & S release portions of the collateral from its lien prior to payment in full of its claim, thus, the treatment of the claim does not fall under subparagraph (i). While the plan for trading tracts with Mr. Wester's mother may have the ultimate effect of sale free and clear of liens as permitted under subparagraph (ii), such sales of property subject to the lien of M & S are not subject to § 363(k)[1] and the lien of M & S will not attach to any proceeds from the sale of its collateral. The debtors have failed to demonstrate that the piecemeal carving up of the property subject to the lien of M & S will not result in a diminution in value of the remaining property to such an extent that M & S will lose the protection of whatever equity cushion is presently available. Accordingly, we cannot find that this plan will give M & S the "indubitable equivalent" of its claim. Thus, this plan is not fair and equitable with respect to the claim of M & S.

■ In addition to the requirement that either all impaired classes have accepted the plan or that the requirements of § 1129(b) have been met, in order for the Court to confirm a plan under Chapter 11 of the Bankruptcy Code, it must specifically find that "Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorgani-

---

1. § 363(k) permits the secured creditor to credit bid at a sale of its collateral under § 363(b).

zation, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed under the plan." 11 U.S.C. § 1129(a)(11). This requires a determination of the feasibility of the proposed plan. In the instant case, the debtors have totally failed to prove that their plan is feasible. They are currently spending more on a monthly basis than they are earning. The accumulated funds which have enabled them to make payments to M & S since January will be depleted in a few months. The various proposals for disposition of the land as presented in the various iterations of the Chapter 11 plan and as presented in Court demonstrate that the debtors are merely grasping at straws in attempting to come up with something that sounds good in hopes of winning confirmation. However, they have presented nothing but Mr. Wester's own optimistic hopes to support their proposals. Based on the foregoing, we cannot find that the debtors' plan is feasible and confirmation thereof will be denied.

■ Having determined that the plan cannot be confirmed, we must now consider where to go with this case. While not specifically requesting dismissal or conversion in its Objection to Confirmation of Debtor's Plan, M & S has prayed for "such other and further relief as this Court deems just and proper under the circumstances." Moreover, § 105(a) of the Bankruptcy Code permits the Court to *sua sponte* raise the issue of dismissal or conversion. This case has been pending now for almost a year and a half without a feasible plan being submitted. This is an uncomplicated case with basically a single asset and individual non-business debtors. Section 1112(b)(2) provides for conversion or dismissal of a case under Chapter 11 based on the debtors inability to effectuate a plan. As Chief Judge Clark aptly stated in his concurring opinion in *In re Timbers of Inwood Forest Associates, LTD*, 808 F.2d 363, 374 (5th Cir.1987), aff'd, —— U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1987),

(a) Reorganization is not a Holy Grail to be pursued at any length. Creditors are entitled to a prompt determination of efficacy.

These debtors have had ample time to reorganize and have been unable to do so. The liquidation analysis contained in the debtors' Disclosure Statement reflects that a liquidation of this estate would result in little or no distribution to creditors. The unsecured debts are minimal. A conversion of this case to a case under Chapter 7 would, therefore, be of no benefit to creditors. Accordingly, this case should and will be dismissed. Accordingly, it is hereby

ORDERED AND ADJUDGED that confirmation of the debtors' Second Amended Plan of Reorganization as modified be and same is denied. A separate order will be entered in accordance herewith dismissing this case.