**In re Judith Faye COVINGTON, Debtor.**

**Bankruptcy No. 94–32265.**

United States Bankruptcy Court,
E.D. Tennessee.

Dec. 29, 1994.

Horace M. Brown, Maryville, TN, for debtor.

Baker, Donelson, Bearman & Caldwell, Nelwyn I. Rhodes, Knoxville, TN, for Security Pacific Housing Services.

Gwendolyn M. Kerney, Chapter 13 Trustee, Knoxville, TN.

1. The debtor subsequently removed the stove and refrigerator from the Mobile Home.

*MEMORANDUM ON OBJECTION TO CONFIRMATION FILED BY SECURITY PACIFIC HOUSING SERVICES*

RICHARD S. STAIR, Jr., Bankruptcy Judge.

Security Pacific Housing Services (Security Pacific), a secured creditor, objects to confirmation of the debtor's Chapter 13 Plan filed September 9, 1994, as modified on October 19, 1994, by a First Amended Plan Prior to Confirmation (Plan). The sole confirmation issue is whether the Plan, which provides for the surrender to Security Pacific of a 1991 Peach State Mobile Home (Mobile Home), but also includes a cram down provision whereby the debtor will retain a stove and refrigerator originally installed in the Mobile Home,[1] meets the confirmation requirements of 11 U.S.C.A. § 1325(a)(1) and (a)(5) (West 1993). All facts essential to a resolution of this contested proceeding are before the court on written Stipulations of Fact and Documents filed by the debtor and Security Pacific on November 23, 1994. Briefs were filed on December 2, 1994.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(L) (West 1993).

### I

The debtor purchased the Mobile Home under the terms of a Retail Installment Contract—Security Agreement (Contract and Agreement) on June 23, 1992, for $28,416.00. Installed within the Mobile Home and included in its purchase price were various furnishings and appliances, including a GE stove and refrigerator. The debtor does not dispute that the furnishings and appliances were acquired with the Mobile Home nor does she dispute that under the terms of the Contract and Agreement she granted Security Pacific a security interest in both the Mobile Home and the furnishings and appliances.[2]

Under her Plan, the debtor proposes to surrender to Security Pacific the Mobile Home together with all the furnishings and appliances, except the GE stove and refrigerator. She proposes to cram down Security

2. Security Pacific is the assignee of the Contract and Agreement.

Pacific's claim with respect to these two items by paying Security Pacific the sum of $350.00 at twelve percent (12%) interest at the rate of $45.00 per month.

Security Pacific, noting that its claim is derived exclusively from the Contract and Agreement executed by the debtor on June 23, 1992, contends that the debtor cannot sever its secured claim into multiple components. In other words, Security Pacific argues that the debtor cannot choose to keep a portion of the property securing its claim by cramming down the claim under 11 U.S.C.A. § 1325(a)(5)(B)(ii) (West 1993) to the extent of the value of the retained items, and at the same time surrender the remainder of the property securing its claim pursuant to § 1325(a)(5)(C). The court agrees.

## II

■ Section 506 is the code provision governing the determination of the secured status of allowed claims. This section provides in material part:

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim.

11 U.S.C.A. § 506(a) (West 1993).

■ The Supreme Court explained that § 506(a) "provides that a claim is secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim is considered unsecured." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 239, 109 S.Ct. 1026, 1029, 103 L.Ed.2d 290 (1989). Thus, notwithstanding that a secured creditor has a single claim, § 506(a) contemplates a bifurcation of a partially secured or undersecured claim into separate and independent secured claim and unsecured claim components. The amount of a creditor's allowed secured claim is dependent upon the value of its collateral. Section 506(a) does not contemplate that a creditor holding a single claim secured by multiple items of property can sever each item of property into an independent allowed secured claim.

The Bankruptcy Code's criteria for the treatment of secured claims under Chapter 13 are set forth in § 1325(a)(5). For a Chapter 13 debtor to obtain confirmation, the plan must provide, that

with respect to each allowed secured claim provided for by the plan—

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder[.]

11 U.S.C.A. § 1325(a)(5) (West 1993).

Thus, "[a] chapter 13 plan otherwise meeting all of the confirmation standards and requirements [of § 1325(a)] must be confirmed if it satisfies any one of the three alternative tests with respect to each allowed secured claim provided for by the plan— acceptance of the plan by the holder of the claim, compliance with the chapter 13 cram down provisions, or surrender of the collateral to the holder of the claim." 5 *Collier on Bankruptcy* ¶ 1325.06[2][c] (15th ed. 1994) (footnotes omitted).

In the present case, the debtor proposes to deal with Security Pacific's single allowed secured claim by bifurcating it into two components and providing each component with a different treatment under § 1325(a)(5). With respect to all of Security Pacific's collateral except the GE stove and refrigerator, the debtor proposes to utilize the confirmation requirement of § 1325(a)(5)(C) by surrendering the collateral. However, with respect to the GE stove and refrigerator, she proposes to provide Security Pacific with a secured claim in the amount of the value of these items, $350.00, and to cram down that claim pursuant to § 1325(a)(5)(B)(ii).

The debtor cannot have it both ways. Security Pacific is the holder of a single allowed secured claim. If the debtor's plan is to be confirmed, she has two alternatives: surrender the Mobile Home and its furnishings and appliances to Security Pacific in compliance with § 1325(a)(5)(C) or cram down Security Pacific's secured claim in its entirety in the manner required by § 1325(a)(5)(B).

The debtor's Plan provides for retention of a lien securing only a portion of Security Pacific's claim and for payment of less than the present value of the entire amount of Security Pacific's secured claim. Thus, the debtor's Plan as presently written violates the confirmation requirement of § 1325(a)(5)(B) by proposing to cram down only a portion of Security Pacific's secured claim. To hold otherwise, would be tantamount to a finding that a creditor in a Chapter 13 case who has a single claim may, at the whim of the debtor, be compelled to bifurcate the secured portion of its claim into as many individual claims as it has items of property securing its claim.[3] Clearly, this interpretation would be inconsistent with §§ 506(a) and 1325(a)(5). *See In re Brown*, 22 B.R. 363 (Bankr.D.Neb.1982).

The bifurcation of a secured claim may be acceptable under other sections of the Bankruptcy Code; however, the lack of flexibility within the cram down provisions of § 1325(a)(5)(B) makes it clear that the bifurcation of Security Pacific's secured claim is inappropriate. The cram down of a dissenting class of secured creditors under Chapter 11 might evoke a different result.[4] For example, in *In re Wester*, 84 B.R. 770, 772 (Bankr.N.D.Fla.1988), the court considered whether a Chapter 11 plan, which provided for the sale of five acres of a thirty acre tract that secured the creditor's claim and the creditor's release of its lien on five of the thirty acres in exchange for the greater of the sale proceeds or $2,000 per acre, satisfied the "indubitable equivalent" requirement of 11 U.S.C.A. § 1129(b)(2)(A)(iii) (West 1993). The court stated that if the debtor proves "that the piecemeal carving up of the property subject to the lien ... will not result in a diminution in value of the remaining property to such an extent that [the creditor] will lose the protection of whatever equity cushion is presently available," the bifurcation of the secured claim may provide the creditor with the "indubitable equivalent" of his claim; and therefore, the Chapter 11 plan may be confirmable. *Wester*, 84 B.R. at 772. However, *Wester* is inapplicable to this case. Congress did not provide for the same flexibility in cram down under Chapter 13 as it did for cram down under Chapter 11.[5]

3. *Under the Bankruptcy Code, " 'claim' means—* (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C.A. § 101(5) (West 1993). In the present case, Security Pacific's "claim" is a "right to payment" under the terms of the June 23, 1992 Contract and Agreement executed by the debtor.

4. The cram down provisions applicable to Chapter 11 are enacted at Code § 1129(b)(2)(A), which provides:

(2) For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
(A) With respect to a class of secured claims, the plan provides—
(i)(I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
(ii) for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
(iii) for the realization by such holders of the indubitable equivalent of such claims.
11 U.S.C.A. § 1129(b)(2)(A) (West 1993). The effect of 11 U.S.C.A. § 1111(b)(2) (West 1993) on cram down under § 1129(b)(2)(A) is not material to this discussion.

5. The "indubitable equivalent" standard enacted at § 1129(b)(2)(A)(iii) is one method for effecting cram down under Chapter 11. This standard is, of course, not contained within § 1325(a)(5)(B). Indubitable equivalence is also an aspect of "ade-

Further, § 1322(b)(2), which states that a plan may "modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence," 11 U.S.C.A. § 1322(b)(2) (West 1993), provides no authority for the debtor's argument that a creditor's single secured claim may be severed into an amount represented by the security interest in the Mobile Home and an amount represented by the security interest in the GE stove and refrigerator. Confirmation of the Plan depends upon the application of § 1325(a)(5). *See Brown,* 22 B.R. at 364.

For the reasons set forth above, Security Pacific's objection will be sustained and confirmation of the debtor's plan will be denied. The court will, however, allow the debtor ten (10) days within which to modify her plan or, alternatively, to move for conversion or dismissal. An appropriate order will be entered.

quate protection" under 11 U.S.C.A. § 361(3) (West 1993). Thus, "adequate protection" is an-

other area that may lend itself to bifurcation of a creditor's secured claim.