In re Jeffrey N. McCOMMONS, Debtor.

No. 02–52484–JDW.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

Nov. 26, 2002.

Calvin L. Jackson, Warner Robins, GA, for Debtor.

Karl E. Osmus, Macon, GA, for Planters First Bank.

## MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on the Objection to Modification of Chapter 13 Plan Prior to Confirmation by Planters First Bank. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

## Findings of Fact

Debtor, Jeffrey N. McCommons, filed a Chapter 13 petition on June 12, 2002. Planters First Bank filed a proof of claim for $6,573.66. The debt owed Planters is secured by several pieces of industrial equipment, including a vertical bandsaw, a disc sander, a drill press, two riveters, a hot dimpler, and a welder, and a 1967 Chevrolet pickup truck. Debtor, who was formerly self-employed, used the collateral in his business. In his bankruptcy schedules, Debtor valued the collateral at approximately $5,800.

Debtor proposed a Chapter 13 plan in which he would pay in full Planters' secured claim. Debtor now seeks to modify his plan prior to confirmation to surrender part of Planters' collateral but to retain the pickup truck and the welder, which he valued at $2,500.[1] Planters objected to confirmation of the plan, arguing that under Section 1325(a)(5) of the Bankruptcy Code, Debtor must either retain all the collateral securing a claim or surrender all the collateral. Debtor argues that he only proposes to keep those items necessary to his current employment. The Court invited both parties to brief the issue of partial surrender of collateral; only Planters did so.

## Conclusions of Law

■■■ The Court holds that Debtor's Chapter 13 plan, with respect to the secured claim of Planters, satisfies Section 1325(a)(5) of the Bankruptcy Code. If a Chapter 13 plan meets the requirements of Bankruptcy Code Section 1325, including subsection (a)(5), which deals with secured claims, the Court must confirm the plan. In the case of secured claims, (A) the creditor must accept the plan, or (B) the creditor must retain its lien and receive payments totaling the amount of its allowed claim (commonly known as cram down), or (C) the debtor must surrender the collateral securing the claim.[2]

The Court has found only three cases directly on point.[3] In *In re Covington*, 176 B.R. 152 (Bankr.E.D.Tenn.1994), the debtor gave the creditor a security interest in a mobile home and its pre-installed furnishings and appliances. After filing for bankruptcy, she sought to surrender the mobile home but to retain and cram down the value of a stove and a refrigerator. *Id.* at 153–54. The court refused to allow a partial surrender of collateral. *Id.* at 155.

---

1. This is Debtor's second Chapter 13 case. He previously filed a case on November 13, 2001, which was subsequently dismissed prior to confirmation. In that case, he proposed to retain all the collateral.

2. Section 1325(a)(5) provides as follows:

   (a) Except as provided in subsection (b), the court shall confirm a plan if—
   . . .
     (5) with respect to each allowed secured claim provided for by the plan—
       (A) the holder of such claim has accepted the plan;
       (B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and
         (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or
       (C) the debtor surrenders the property securing such claim to such holder[.]
   11 U.S.C.A. § 1325(a)(5) (West 1993).

3. Piecemeal surrender of collateral is commonplace in the Middle and Southern Districts of Georgia, where this Judge sits. Therefore, the Court is surprised by the dearth of opinions on this issue. However, the practice may be so routine that courts only resort to written opinions when it is successfully challenged. This is merely an observation, and in no way informs the decision of the Court. To the contrary, because the practice has been generally accepted without question in this District, the analysis has proved a useful exercise.

The court noted that the creditor held a single secured claim and that the debtor was effectively trying to split it into two claims, each receiving different treatment. *Id.* at 154. The court said the debtor had only two options: Either surrender all the collateral or cram down the secured claim. *Id.* at 155. "To hold otherwise, would be tantamount to a finding that a creditor in a Chapter 13 case who has a single claim may, at the whim of the debtor, be compelled to bifurcate the secured portion of its claim into as many individual claims as it has items of property securing its claim." *Id.* Furthermore, the court stated that partial surrender of collateral is inconsistent with 11 U.S.C. Section 506(a), which provides for bifurcation of oversecured claims into secured and unsecured components but does not contemplate further bifurcation of a claim secured by multiple items of collateral. *Id.* at 154.

In *Williams v. Tower Loan of Mississippi, Inc.* (*In re Williams*), 168 F.3d 845, 847 (5th Cir.1999), the Fifth Circuit Court of Appeals also rejected a debtor's proposed partial surrender of collateral and partial cram down. The debtor had given the creditor a security interest in various unrelated items of personal property, including books, jewelry, and electronic equipment. She proposed surrendering all the collateral except a camera and a videocassette recorder, the value of which she would cram down. *Id.* at 846.

The debtor argued that under Section 102(5)[4] of the Bankruptcy Code the word "or" is not intended to be exclusive. *Id.* at 846–47. The court disagreed, stating that taking Section 102(5) into account, "it does not follow that Congress intended the word 'or' to create a fourth alternative" in Section 1325(a)(5). *Id.* at 847. "The plain language of the statute does not give the debtor the right to adopt a combination of the options offered in (B) and (C)." *Id.* Furthermore, the court found that an all or nothing interpretation of Section 1325(a)(5) is supported by the United States Supreme Court's decision in *Associates Commercial Corporation v. Rash*, 520 U.S. 953, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997). 168 F.3d at 847. In *Rash*, the Court stated that under Section 1325(a)(5) a plan can be confirmed " 'if *one of three* conditions is satisfied: the secured creditor accepts the plan . . .; the debtor surrenders the property securing the claim to the creditor . . .; *or* the debtor invokes the so-called "cram down" power.' " *Id.* (quoting 520 U.S. at 957, 117 S.Ct. at 1882) (emphasis added).

In *In re Schwartz*, No. 96–18913, 1998 WL 37551 (Bankr.E.D.Pa. Jan.22, 1998), the IRS held a claim secured by real property and personal property. The debtors proposed to surrender the real property and to retain the personal property, arguing that based on Section 102(5), they could use both subsections (B) and (C) of Section 1325(a)(5). *Id.* at *1–2. The court rejected the debtors' argument, finding that it is impossible for a debtor to satisfy both (B) and (C) because if a debtor surrenders part of the collateral under (C), then he is unable to pay the full amount of the allowed secured claim as required by (B). *Id.* at *3. Furthermore, the court found that subsection (C)'s option to surrender "the property" refers to all the collateral securing the claim. *Id.* The court concluded that if Congress had intended to allow partial surrender, it would have expressly stated so in the statute. *Id.*

This Court disagrees with the interpretation of § 1325(a)(5) in the above cases. The Bankruptcy Code cannot be read in a vacuum. One of the fundamentals con-

---

**4.** "In this title—. . . (5) 'or' is not exclusive[.]"

11 U.S.C.A. § 102(5) (West 1993).

cepts underlying all debtor-creditor law is the debtor's ability to surrender his rights in collateral at any time. Furthermore, the structure of the Code sets out an obligation for the debtor to surrender unnecessary collateral. For example, under Section 362(d)(2), a secured creditor can obtain relief from the automatic stay when the debtor has no equity in the collateral and it is "not necessary to an effective reorganization." 11 U.S.C.A. § 362(d)(2) (West 1993 & Supp.2002). This Section of the Code does not require the Court to modify the stay as to all the creditor's collateral. To do so would frustrate the policies underlying the Code of providing the debtor with a fresh start and serving as a collective debt recovery mechanism for all creditors.

The same is true under Section 1325(a)(5). Debtor in this case requires the truck and the welder for his employment. To force surrender of those items could torpedo Debtor's efforts to reorganize. On the other hand, to require Debtor to retain unneeded collateral would reduce the 40 percent dividend Debtor has proposed to pay the unsecured creditors.

■ Furthermore, this Court finds that the plain language of Section 1325(a) allows partial surrender. Section 102(5) expressly treats the word "or" as nonexclusive. The legislative history to Section 102(5) reads as follows: "Paragraph (5) specifies that 'or' is not exclusive. Thus, if a party 'may do (a) or (b)', [sic] then *the party may do either or both.* The party is not limited to a mutually exclusive choice between the two alternatives." H.R.Rep. No. 95–595, at 315 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5963, 6272, *reprinted in* C Collier on Bankruptcy, App. Pt. 4(d)(i) (15th ed. rev.2002) (emphasis added). Therefore, based on Section 102(5), a debtor may choose to combine the options in Sections 1325(a)(5)(B) and (C).

Finally, Section 1325(a) does not set out requirements for a plan. It does not tell a debtor what he can and cannot propose. Rather it tests what has been proposed, and subsection (a)(5) ensures that the secured creditor receives the full value of its allowed secured claim. Nothing in the language of the statute prevents the Court from conducting that test, as it applies to treatment of collateral, on an item-by-item basis. Of course, not all collateral can be divided for separate consideration. If the value of the collateral as a whole is dependant upon it remaining as a unit, then the debtor may not surrender a portion of it. For example, in the case of a marble chess set, the debtor could not surrender a single pawn. A good analogy for this concept is provided by the state law of accessions. Accessions are "goods that are physically united with other goods in such a manner that the identity of the original goods is not lost." O.C.G.A. § 11–9–102(a)(1) (2002). However, in the case of partial surrender under Section 1325(a)(5), the goods do not necessarily have to be "physically united," as the chess set example demonstrates.

For the foregoing reasons, the Court holds that the alternatives in Section 1325(a)(5) are mutually not exclusive and overrules the objection of Planters. If a secured creditor does not accept the Chapter 13 plan, then the debtor may use a combination of Sections 1325(a)(5)(B) and 1325(a)(5)(C) in its treatment of the secured claim.

An Order in accordance with this Opinion will be entered on this date.