**WESTERN AUTO SUPPLY COMPANY, Appellant,**

v.

**BRAZOSPORT BANK OF TEXAS, Appellee.**

**No. 01–91–00116–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

Oct. 22, 1992.

Charles S. Baker, Houston, for appellant.

Craig W. Hathway, Dennis D. Morgan & Associates, P.C., El Campo, for appellee.

Before DUGGAN, MIRABAL and WILSON, JJ.

## OPINION

DUGGAN, Justice.

In this suit for declaratory judgment, appellant, Western Auto Supply Company (Western Auto), appeals the take-nothing summary judgment rendered on cross motions for summary judgment in favor of appellee, Brazosport Bank of Texas (Bank). The court denied Western Auto's motion and granted the Bank's motion. We affirm.

The undisputed evidence drawn from the parties' stipulation of facts, summary judgment evidence, and briefs is as follows. In 1979, Fortner Brothers, Inc. (Fortner) borrowed money from the Bank to open a White's Auto Store in Freeport. As security for the loan, Fortner gave the Bank a first perfected security interest in Fortner's inventory, accounts receivable, equip-

ment, and fixtures (collateral). Fortner then began to operate the White's Auto Store in Freeport, and executed an authorized dealer store contract and security agreement granting White Stores, Inc. (White's) a second perfected security interest in the collateral.

White's requested the Bank to subordinate its first priority lien on the collateral, and the Bank agreed to do so. On March 28, 1980, the Bank signed a subordination agreement (the first Bank/White's subordination agreement), subordinating priority of the Bank's lien in the collateral in favor of White's to the extent of the first $45,000 of collateral. In May 1983, Fortner borrowed additional money from the Bank and on May 3, 1983, the Bank signed a second subordination agreement, subordinating its interest in Fortner's collateral to White's to the extent of the first $40,000 of collateral. To continue perfection of its security interest, White's filed a continuation statement on January 30, 1985, pursuant to TEX.BUS. & COM.CODE ANN. § 9.403 (Vernon 1991).

In December 1985, White's ceased selling inventory to Fortner, and in January 1986, White's decided to sell to Western Auto certain dealer accounts receivable and some other property.

In February 1986, White's sold its Fortner accounts receivable to Western Auto. As part of the sale, White's assigned Western Auto both its security interest in Fortner's inventory and the first Bank/White's subordination agreement. Western Auto perfected the assignment of the White's security interest by filing UCC–3 statements with the county clerk and the secretary of state. At the time, Fortner owed White's $6,931.44. On March 20, 1986, Western Auto advised the Bank by letter that White's had assigned all of its rights under the first Bank/White's subordination agreement to Western Auto. The Bank made no objection to the assignment. On June 25, 1986, Fortner gave Western Auto a promissory note for the $6,931.44 balance of the account receivable. Subsequently, Fortner paid Western Auto all of that balance except $35.

One reason Western Auto purchased dealer accounts receivable from White's was that Western Auto hoped to persuade the dealers to become Western Auto store dealers who would purchase and sell Western Auto merchandise. In February 1986, Fortner did become a Western Auto store dealer, signing a "Western Auto Associated Store Contract," as well as two security agreements and financing statements.

Fortner incurred new indebtedness directly to Western Auto through various credit accounts and loans. Fortner defaulted in the payment of the various indebtednesses, and in August 1987, Western Auto brought suit against Fortner. In October of 1987, Fortner filed a chapter 11 petition for bankruptcy. As of April 30, 1988, Fortner owed Western Auto $32,817.19.

In January 1988, in response to Western Auto's request, White's executed a second assignment of partial subordination agreement, assigning all its interest in the second Bank/White's subordination agreement to Western Auto.

On May 12, 1988, the Bank mailed notice to Western Auto of its intention to foreclose on its security interest in the collateral and sell the property at public auction. Upon receipt of the notice, Western Auto advised the Bank that, by the assignment from White's to Western Auto, it held a first perfected security interest in the collateral to the extent of the first $40,000 in proceeds from the sale. The Bank refused to recognize the priority of a Western Auto lien, and proceeded to foreclose its security interest. At the time of the Bank's foreclosure, Western Auto claimed a lien of $32,817.19 against the collateral. Western Auto filed an application for temporary injunction, which the court denied. Thereafter, Western Auto filed a motion for summary judgment, which the court denied. The Bank foreclosed on the collateral and, as the highest bidder at the public sale, purchased the collateral for a $17,000 credit against its outstanding indebtedness. On November 1, 1990, the Bank moved for summary judgment on the ground that it had a first perfected lien in the collateral. Western Auto responded with a cross-motion for summary judgment, asserting it had priority. The trial court granted the Bank's motion, denied Western Auto's cross-motion, found that "the subordination agreement did not alter the priority of Western Auto's lien as to Brazosport Bank," and entered a take nothing judgment against Western Auto.

In its first and second points of error, Western Auto asserts the trial court erred in granting the Bank's motion for summary judgment and denying Western Auto's. Because these two points involve the same facts and law, we will consider them together.

■ A subordination agreement is a contractual modification of lien priorities; as such, it must be construed according to both the expressed intention of the parties and its own terms. *ITT Diversified Credit Corp. v. First City Capital Corp.*, 737 S.W.2d 803, 804 (Tex.1987).

> The intention of the contracting parties is of controlling significance to a determination that a third party may enforce the contract provision. In deriving intent, we must begin with the presumption that parties contract for themselves, and a contract will not be construed as having been made for the benefit of third parties unless it clearly appears that such was the intention of the contracting parties.

*Corpus Christi Bank and Trust v. Smith*, 525 S.W.2d 501, 503–04 (Tex.1975) (citation omitted). Future indebtedness stipulations apply only to those debts that were reasonably within the contemplation of the parties at the time the debt instrument was made. *See Wood v. Parker Square State Bank*, 400 S.W.2d 898, 901 (Tex.1966) (a future indebtedness stipulation in a mortgage held not to apply to debtor's unsecured debt to third party purchased by the bank, although debtor's mortgage, with bank as mortgagee, was security for bank's original loan to debtor); *see also Kimbell Foods, Inc. v. Republic Nat'l Bank*, 557 F.2d 491, 495 (5th Cir.1977), *affirmed*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (applied the *Wood* concept of "within the contemplation of the parties" to securi-

ty interests arising under the Texas Business and Commerce Code).

 Generally, a later contract is incorporated with or correlated to an old agreement when it is the intention of the parties as expressed in the later agreement. *National Convenience Stores, Inc. v. Martinez*, 784 S.W.2d 468, 471 (Tex.App.—Texarkana 1989, writ denied). The second subordination agreement indicates the intention of White's and the Bank that the Bank's subordination agreement be correlated with the earlier security agreement.[1] Thus, we must construe the security agreement and the second subordination agreement together in order to determine whether Fortner, White's, and the Bank clearly contemplated, when the subordination agreement was made, that (1) the subordination agreement could be assigned, and (2) the Bank's first perfected security interest lien against the collateral would continue to be subordinate to that security interest for Fortner's debts incurred not only to White's, but also to the new debts incurred directly by Fortner to such an assignee, e.g., Western Auto.

The Fortner/Bank security agreement states, "This Security Agreement may be assigned without notice to Debtor and when assigned shall be free from any defense, counterclaim or cross-complaint by Debtor. The assignee shall be entitled to the same rights as his assignor." Toward the end of the security agreement it states that it "shall inure to the benefit of Secured Party [White's] and its successors and assigns." Thus, the parties clearly contemplated the assignment of the security agreement.

 In contrast with the security agreement, the express terms of the subordination agreement speak only of White's claims, not those of White's successors and assigns, and make no mention of assignment. Because provision for assignment was not made in the subordination agreement, we conclude that the parties did not contemplate White's assignment of the subordination agreement in such a manner that the Bank's security interest would be subordinate to the security interest of a new supplier in new debt incurred under a separate store dealership contract with Fortner.

Furthermore, the commentary under TEX.BUS. & COM.CODE ANN. § 9.316 (Vernon 1991), the provision that authorizes subordination agreements, provides that only the person entitled to priority may make such an agreement. To give effect to the subordination agreement in the manner Western Auto asserts would allow White's to subordinate the Bank's first perfected security interest to third parties without the Bank's consent.

Accordingly, we overrule appellant's first and second points of error.

We affirm the judgment.

---

1. The second subordination agreement refers to the earlier security agreement as being dated May 3, 1983. The only security agreement in the record is dated March 27, 1980. All the references in the parties' briefs are to the March 27, 1980 security agreement, which leads us to believe the date shown on the subordination agreement is a typographical error.