Opinion issued November 27, 2002




 


 


In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-00-00144-CV
____________

PATTON STREET CORPORATION AND LONE STAR TRUCK STOP, INC.,
Appellants

V.

NAB ASSET VENTURE II, L.P., Appellee




On Appeal from the 152nd District Court 
Harris County, Texas
Trial Court Cause No. 96-38921 




OPINION ON REHEARING
          This is an appeal from a declaratory judgment rendered on motions and cross-motions for summary judgment. This judgment resolved competing liens affecting
a 24.5-acre Houston commercial property (the property) in favor of appellee, NAB
Asset Venture II, L.P. (NAB), plaintiff in the trial court. Patton Street Corporation
(Patton Street), appellant here and one of several defendants in the trial court,
challenges this judgment and the denial of its own motion for summary judgment. 
On February 28, 2002, we reversed and remanded. NAB filed a motion for
rehearing. We deny the motion for rehearing, but issue this opinion in place or our
original opinion. Accordingly, we deny, as moot, NAB’s motion for reconsideration
en banc.


 We address issues raised by the motions for summary judgment and
pertinent to the relative superiority between a future-advance, or “dragnet,” clause
in an initial lien and a subordination clause in a competing, third lien. We reverse
and remand. 
Facts and Procedural History
A.      Background
          In 1993, Patton Street, on behalf of a joint venture with others, purchased the
property for $1,200,000 from Lone Star Truck Stop, Inc. (Lone Star), which had
acquired the property in 1991.


 Lone Star issued a general warranty deed to Patton
Street. Patton Street also paid approximately $250,000 in outstanding property taxes
shortly after the closing. Early in 1996, Patton Street leased a portion of the property
to a tenant. The tenant improved the property and used it as a truck stop. 
          In 1996, NAB sued Patton Street and others, including Lone Star and Patton
Street’s tenant, to challenge Patton Street’s ownership. NAB, which had purchased
a third lien note against the property from the Resolution Trust Corporation (RTC)
in 1993, asserted first priority lien rights, with a right to foreclose, on the grounds
that its third lien note was in turn secured by a first lien deed of trust, executed in
1986 (the first lien), which contained a future-advance, or “dragnet,” clause.


 
B.      The Liens
          1.       First Lien Deed of Trust
          On March 26, 1986, George W. Gilman, an individual, purchased the property
from Central Freight Lines (Central Freight). First Capital Savings Association
(First Capital) financed the transaction through a commercial real estate note (the
first note), in the principal amount of $2,572,000, secured by a first lien. Central
Freight issued Gilman a general warranty deed that reserved a vendor’s lien in favor
of Central Freight, which Central Freight assigned to First Capital as additional
security for Gilman’s loan. Twelve days later, on April 7, 1986, Gilman deeded the
property, subject to the first lien and the vendor’s lien, to a corporation, Velma, Inc.
(Velma), through a transaction by which Velma assumed the first note. The first lien
was filed of record on April 9, 1986. 
          The first lien contains the following future-advance clause:
This deed of trust shall secure, in addition to the Note, all funds
hereafter advanced by Beneficiary to or for the benefit of [Gilman],
as contemplated by any covenant or provision herein contracted or
for any purpose, and all other indebtedness, of whatever kind or
character, owing or which may hereafter become owing by [Gilman]
to Beneficiary, whether such indebtedness is direct or indirect,
primary or secondary, fixed or contingent or arises out of or is
evidenced by note, deed of trust, open account, overdraft,
endorsement, surety agreement, guaranty, or otherwise. It being
contemplated that [Gilman] may hereafter become indebted to
Beneficiary in further sum or sums (all of the aforesaid, including all
amounts payable under the Note, being hereinafter sometimes called
“said indebtedness.”) Said indebtedness shall be payable at the above
stated address of Beneficiary or at such other place as Beneficiary may
hereafter direct in writing; and, unless otherwise provided in the
instrument evidencing said indebtedness, shall bear interest at the same
rate per annum as the Note bears, from date of accrual of said
indebtedness until paid. In addition, any and all attorney’s fees and
expenses of collection payable under the terms of the Note shall be and
constitute a part of said indebtedness secured hereby. This Deed of
Trust shall also secure all renewals, rearrangement and extensions
of any said indebtedness. 
 
(Emphasis added.)
 
          2.       Second Lien Deed of Trust
 
          Also on April 7, 1986, Velma borrowed $262,529.50 from the original owner
of the property, Central Freight, and executed a commercial real estate note (the
second note) and deed of trust in favor of Central Freight (the second lien) for that
indebtedness. This note served to reimburse Central Freight for funds advanced for
ad valorem taxes.


 The second lien was filed of record on April 9, 1986, along with
the first lien. 
          3.       Third Lien Deed of Trust
          Just under two years later, on February 29, 1988, Velma borrowed an
additional $1,978,859.41 from First Capital. This loan was secured by an additional
note (the third note) and deed of trust (the third lien) in favor of First Capital. The
third lien was recorded on March 3, 1988. A typewritten provision added to the third
note stated as follows: 
The lien securing this Note shall be and remain secondary and inferior
to the lien securing those two certain Promissory Notes more
particularly described in [sic] Deed of Trust of even date herewith. 
 
The third lien was essentially similar to the first lien, except that it contained three
added typewritten clauses. The third typewritten clause stated as follows: 
It is stipulated, covenanted and agreed that the lien created by this
instrument shall be and remain secondary and inferior to the lien(s)
securing the payment of that (1) one certain other Promissory Note in
the principal sum of $2,572,000.00 dated March 21, 1986, executed by
GEORGE W. GILMAN and payable to the order of FIRST CAPITAL
SAVINGS ASSOCIATION OF TEXAS,


 more fully described in a
Deed of Trust recorded under File No. K485910 of the County Clerk’s
Records of Harris County, Texas; . . . and (2) one certain Promissory
Note in the principal sum of $250,000 dated April 9, 1986, executed by
VELMA, INC., and payable to the order of CENTRAL FREIGHT
LINES, INC.,


 more fully described in a Deed of Trust recorded under
File No. K486570 of the County Clerk’s Records of Harris County,
Texas. 
 
C.      NAB’s Acquisition
          First Capital was declared insolvent in March 1989 and taken over first by the
Federal Savings and Loan Insurance Corporation (FSLIC) and then by the RTC,
which was appointed receiver. On October 13, 1993, and thus before Patton Street’s
November 30, 1993 purchase, NAB purchased the third note for $120,000 at a
national RTC auction. This was a non-recorded quitclaim assignment. On May 13,
1994, the RTC assigned to NAB a judgment entered on October 14, 1992 in Civil
Action No. H-89-1150 by the United States Court for the Southern District of Texas
(the federal court judgment). This judgment adjudicated Velma liable for
$1,978,859.41, the full amount of the third note, plus over $1,000,000 in accrued and
per diem interest. The quitclaim assignment to NAB was not recorded until
September 26, 1994. 
D.      This Litigation
          Based on the future-advance clause, NAB filed this lawsuit, claiming the
following: (1) the first lien had priority; (2) Lone Star’s 1991 acquisition of the
property was therefore void; and (3) Patton Street therefore acquired no rights when
it purchased the property from Lone Star in 1993. Patton Street’s counterclaim
asserted superior rights in the property, including rights as bona fide purchaser. 
          The parties promptly filed motions for summary judgment seeking declaratory
relief. These were referred to a mediator by an agreed order issued by the trial court. 
As contemplated by the agreed order, when no settlement occurred, the mediator,
whose role then switched to that of a master, submitted a 23-page advisory opinion
and report to the trial court. On the issue of the rights NAB derived from the first
lien, the report recommended granting Patton Street’s motion and denying NAB’s. 
The report also concluded that fact issues on the status of Patton Street as bona fide
purchaser precluded summary judgment. 
          NAB and Patton Street submitted additional briefing to the trial court, which
initially rendered an interlocutory summary judgment in favor of Patton Street. 
When NAB moved for reconsideration, the trial court again referred the motion to
the mediator/master, who issued a supplemental, revised, advisory report, but still
recommended summary judgment in favor of Patton Street on the issue of the rights
NAB derived from the first lien. NAB and Patton Street filed additional briefing
pertaining to the recommendations contained in the report. NAB also requested
leave to file an affidavit as additional summary judgment evidence. The trial court
granted NAB’s request, but refused to allow Patton Street to file an affidavit in
response. 
          After resolving several matters to finalize the issues for appeal, the trial court
reversed its prior ruling and ruled in favor of NAB, first by an interlocutory order on
the parties’ cross-motions for summary judgment, and then by a final, declaratory
judgment that extensively detailed how the three liens against the property affected
the parties’ rights. This judgment of the trial court reflects the following conclusions
on NAB’s and Patton Street’s competing claims to the property: 
          1.       NAB was the sole owner of the “Third Debt,” worth approximately
$5,244,369.06, which was secured by both the first lien and the third
lien, and had a right to foreclose on either of these liens.
 
          2.       Lone Star’s foreclosure of the second lien and later transfer of the
property to Patton Street were void ab initio, and Lone Star and Patton
Street therefore had no interest, either legal or equitable, in the
property. 
 
          3.       Patton Street was not a bona fide purchaser.
 
Patton Street brings a broad challenge to this judgment in its first issue and raises six
additional subsidiary issues. We address each party’s interpretation of the effect of
the future-advance clause as warranting summary judgment. In addition, we address
Patton Street’s contentions that NAB was not entitled to prevail by summary
judgment on the grounds that Patton Street (1) was not a bona fide purchaser, (2) was
barred by res judicata from contesting NAB’s right to foreclose, and (3) had no
standing to contest NAB’s claims. 
 

Standards of Review
          Patton Street’s first and second issues trigger the well-settled standards that
govern summary judgments and interpretation of written instruments. 
A.      Summary Judgment - Rule 166a(a)
          NAB and Patton Street filed traditional rule 166a(a) motions for summary
judgment. We follow the usual standard of review: The party with the burden of
proof must prove it is entitled to judgment by establishing each element of its claim
or defense as a matter of law, or by negating an element of claim or defense of the
opposing party as a matter of law. Tex. R. Civ. P. 166a(a)–(b), comment; Randall’s
Food Mkts. Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). When a motion for
summary judgment raises multiple grounds, we may affirm if any ground is
meritorious. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625 (Tex. 1996);
Hanson v. Republic Ins. Co., 5 S.W.3d 324, 327 (Tex. App.—Houston [1st Dist.]
1999, pet. denied). When, as here, both parties move for summary judgment, and the
trial court grants one motion and denies the other, we may determine all questions
presented, including the propriety of overruling the appealing party’s motion,
provided each party has fully met its burden and sought final judgment relief. CU
Lloyd’s v. Feldman, 977 S.W.2d 568, 569 (Tex. 1998); Hanson, 5 S.W.3d at 327. 
We consider all summary judgment grounds the trial court rules on that the appealing
parties preserve for appellate review and are necessary for final disposition of the
appeal. See Cates, 927 S.W.2d at 626. 
B.      Interpretation of Written Instruments
          Unambiguous written instruments may be interpreted as a matter of law by
summary judgment. See DeWitt County Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 100
(Tex. 1999); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); GTE Mobilnet, Ltd.
Partnership v. Telecell Cellular, Inc., 955 S.W.2d 286, 289 (Tex. App.—Houston
[1st Dist.] 1997, writ denied). Mortgages are written instruments governed by the
same rules of interpretation that govern contracts. Sonny Arnold, Inc. v. Sentry Sav.
Ass’n, 633 S.W.2d 811, 815 (Tex. 1982); Starcrest Trust v. Berry, 926 S.W.2d 343,
351 (Tex. App.—Austin 1996, no writ). 
          A contract is not ambiguous if its wording permits a definite or certain legal
meaning. DeWitt County Elec. Coop., 1 S.W.3d at 100; National Union Fire Ins. Co.
v. CBI Indus., 907 S.W.2d 517, 520 (Tex. 1995). A contract is ambiguous if, after
applying established rules of construction, its meaning is uncertain and doubtful, or
the writing is reasonably susceptible to more than one meaning. DeWitt County
Elec. Coop., 1 S.W.3d at 100; Coker, 650 S.W.2d at 393. In determining whether
a contract is ambiguous, courts construe and harmonize all provisions of the contract
to discern the parties’ intent. Coker, 650 S.W.2d at 393-94; Weaver v. Highlands
Ins. Co., 4 S.W.3d 826, 830 (Tex. App.—Houston [1st Dist.] 1999, no pet.). This
inquiry also considers the context of the agreement of the parties and the
circumstances present when the agreement arose. Friendswood Dev. Co. v. McDade
+ Co., 926 S.W.2d 280, 282 (Tex. 1996). To discern the contracting parties’ intent,
courts may properly consider all writings pertaining to the same transaction, even if
the writings were executed at a different time and do not expressly refer to one
another. DeWitt County Elec. Coop., 1 S.W.3d at 102.    Summary judgment is
improper when ambiguity exists because facts must be resolved to discern the
parties’ intent. Harris v. Rowe, 593 S.W.2d 303, 306 (Tex. 1979); Simpson v. Geico
Gen. Ins. Co., 907 S.W.2d 942, 945 (Tex. App.—Houston [1st Dist.] 1995, no writ). 
But a writing is not ambiguous merely because it lacks clarity or because a
disagreement in interpretation arises. DeWitt County Elec. Coop., 1 S.W.3d at 100;
Weaver, 4 S.W.3d at 830. Moreover, parol evidence of the contracting parties’ intent
is not admissible to support a claim that terms of a contract are ambiguous. 
Friendswood Dev. Co., 926 S.W.2d at 283. Likewise, parol evidence of the parties’
intent is not admissible to vary the terms of an otherwise unambiguous instrument. 
Estes v. Republic Nat’l Bank, 462 S.W.2d 273, 275 (Tex. 1970). For parol evidence
of the parties’ intent to be admissible, the contract must first be ambiguous as a
matter of law. Id. Ambiguity may be patent or latent. Friendswood Dev. Co., 926
S.W.2d at 282-83. Patent ambiguity is evident on the face of the contract. Id. at 282. 
When a contract is otherwise unambiguous on its face and fails because of collateral
matters, the ambiguity is latent. Id. at 282-83. 
Reasonably Contemplated Scope of the Future-Advance Clause
          Patton Street’s first and second issues challenge whether NAB conclusively
established its right to foreclose on the property by virtue of the future-advance
clause in the first lien securing the $2,600,000 first note between First Capital and
Velma. Patton Street contends the first lien did not secure the third debt as a matter
of law because the typewritten additions to the third lien conclusively negate the
effect of the future-advance clause. In the alternative, Patton Street contends the
written instruments are ambiguous and that parol evidence is necessary to discern the
intent of the parties in executing the instruments. Patton Street further contends: (1)
NAB conceded the instruments were ambiguous by submitting the affidavit of
Robert J. Adam, First Capital’s President/CEO and general counsel, in which he
explained that First Capital did not intend to negate the future-advance clause in the
first lien; and (2) the trial court compounded its error in interpreting the instruments
“as a matter of law” by admitting the parol evidence in Adam’s affidavit and refusing
to admit Patton Street’s proffered affidavit of Wendell H. Sandlin, the president of
Velma, in which he explained his understanding of the purpose of the subordination
language in the third lien. 
          Courts presume that debt instruments containing future-advance clauses
embody the contracting parties’ intent and will enforce agreements that “clearly and
unambiguously” state that intent. See Estes, 462 S.W.2d at 276 (rejecting challenge
to enforcement of clause allegedly included by mutual mistake because parol
evidence offered to negate clause failed “clear, exact, and satisfactory” standard). 
Mortgage clauses that secure future indebtedness apply, however, only to debts that
are reasonably within the contemplation of the parties. See Wood v. Parker Square
State Bank, 400 S.W.2d 898, 901 (Tex. 1966); Vaughn v. Crown Plumbing & Sewer
Serv., Inc., 523 S.W.2d 72, 76 (Tex. Civ. App.—Houston [1st Dist.] 1975, writ ref’d
n.r.e.). In enforcing future-advance clauses, therefore, courts necessarily construe
not only the instrument that contains the future-advance clause, but also the
instrument that creates the future indebtedness to be enforced under the clause. See
Vaughn, 523 S.W.2d at 76-77; Bishop v. Nat’l Loan Investors, L.P., 915 S.W.2d 241,
244-45 (Tex. App.—Fort Worth 1995, writ denied); Airline Commerce Bank v.
Commercial Credit Corp., 531 S.W.2d 171, 175 (Tex. Civ. App.—Houston [14th
Dist.] 1975, writ ref’d n.r.e.) (all construing documents containing future-advance
clauses and documents creating indebtedness sought to be enforced); see also DeWitt
County Elec. Coop., 1 S.W.3d at 102 (holding that courts properly consider all
writings pertinent to same transaction, even those executed at different time and
without reference to transaction).


 
          In challenging NAB’s contention that the future-advance clause in the first
lien deed of trust clearly and unambiguously encompasses the third note between
First Capital and Velma, Patton Street relied, in part, on the additional, typewritten
clauses, excerpted above, that were incorporated into the third note and third lien
negotiated between Velma and First Capital. Patton Street contends the typewritten
provisions indicate the parties’ express intent to subordinate the lien securing the
third debt to the liens securing the first and second debts. See Western Auto Supply
Co. v. Brazosport Bank, 840 S.W.2d 157, 159 (Tex. App.—Houston [1st Dist.] 1992,
no writ) (defining “subordination agreement” as “a contractual modification of lien
priorities” that must be construed both as to parties’ expressed intent and its own
terms). Therefore, Patton Street contends, the additional, typewritten provisions
indicate Velma’s and First Capital’s express intent to exempt the third debt from the
application of the preprinted future-advance clause in the first lien and thus prevent
the third debt from falling within the scope of the future-advance clause.
          NAB challenges Patton Street’s reliance on the additional typewritten clauses
on several grounds. NAB first contends the terms of the third deed of trust cannot
be considered for any purpose in construing the meaning of the future-advance
clause in the first lien because Velma and First Capital executed these documents
two years after the first note and as part of a different transaction.


 But, the only case
NAB relies on does not support this argument. Jim Walter Homes, Inc. v.
Schuenemann merely acknowledges, as a settled rule of contract interpretation and
in the context of a claim that an acceleration-of-maturity clause was usurious, that
courts must construe, together, separate documents that are executed at the same
time, for the same purpose, and in course of the same transaction. 668 S.W.2d 324,
327 (Tex. 1984). 
          Moreover, NAB’s argument ignores that courts must necessarily examine the
documents creating the future indebtedness in determining whether the parties
reasonably contemplated that a future-advance clause encompass that indebtedness. 
See Vaughn, 523 S.W.2d 76; Bishop, 915 S.W.2d at 244-45; Airline Commerce
Bank, 531 S.W.2d at 175. NAB’s arguments also ignore that we must consider and
attempt to reconcile all relevant provisions when interpreting written instruments. 
See Coker, 650 S.W.2d at 393. Finally, in defending its interpretation that the
future-advance clause encompasses the third debt, NAB belies that it rejects the third
lien and note by asking us to consider other documents executed at that point in time. 
NAB alternatively dismisses the added typewritten provisions as mere “boilerplate”
exceptions to warranties of title that appear elsewhere in the third lien. In
subordinating the third lien to the first and second liens, however, the provisions
exceed that minimal function. 
          Although we reject NAB’s dismissal of the added typewritten subordination
provisions in the third note and lien, we do not agree that the provisions conclusively
bar the indebtedness secured by the third lien from falling within the future-advance
clause. In contending they do, Patton Street asks rhetorically: If the parties intended
the future-advance clause to encompass the third debt, why would they (1) create a
separate lien to secure the third debt, (2) expressly subordinate that lien to the first
and second liens, but (3) never mention the future-advance clause in the third-debt
documents, or (4) otherwise indicate that the first lien also secured the third debt? 
          As these questions and NAB’s and Patton Street’s arguments demonstrate, and
as we have determined after applying settled rules of construction, the instruments
at issue here do not permit the definite or certain legal meaning accorded by the trial
court in rendering summary judgment in favor of NAB as sole owner of the third
debt, which debt was secured by both the first and third liens. Accordingly, the trial
court erred by rendering summary judgment in favor of NAB on that ground. 
Likewise, the instruments at issue here do not permit the definite and certain legal
meaning that the third debt was not reasonably within the contemplation of the
parties to the first lien, as Patton Street contends. Accordingly, the trial court did not
err by not rendering summary judgment in favor of Patton Street on that ground. 
          Because it is not possible to discern, with certainty, the effect of the
typewritten subordination clause added to the third lien on the future-advance clause,
and vice versa, we cannot say, with certainty, that Gilman and First Capital
reasonably contemplated, in executing the first lien containing the future-advance
clause, that the clause would encompass the third indebtedness negotiated between
Velma and First Capital. The typewritten subordination clause added to the third
lien thus gives rise to a latent ambiguity in interpreting the future-advance clause in
the first lien. Because of this latent ambiguity, parol evidence is admissible to
ascertain Gilman’s and First Capital’s intent in including the future-advance clause
in the first lien, and to ascertain, given the future-advance clause, Velma’s and First
Capital’s intent in adding the subordination clauses in the third note and lien. 
Accordingly, although inconsistent with its rendering summary judgment in favor
of NAB, the trial court did not err by admitting into evidence the affidavit of Robert
J. Adam, First Capital’s President/CEO and general counsel, in which he explained
that First Capital did not intend to negate the future-advance clause in the first lien
by adding the typewritten subordination clause. Because parol evidence of the
parties’ intent is admissible, the trial court did err, however, by refusing to admit
Patton Street’s proffered affidavit of Velma’s president, Wendell H. Sandlin, in
which he explained his understanding of the purpose of the subordination language
in the third lien. 
          We sustain Patton Street’s first and second issues, except as to its challenge
to the trial court’s admitting the Adam affidavit. 
Patton Street’s Bona Fide Purchaser Defense 
          In its sixth issue, Patton Street contends the trial court erred by rendering
summary judgment in favor of NAB on the ground that Patton Street was not a bona
fide purchaser when it acquired the property from Lone Star in 1993.


 Bona fide
purchaser status is an affirmative defense. See Madison v. Gordon, 39 S.W.3d 604,
605 (Tex. 2001). A bona fide purchaser acquires its interest in a property in good
faith, for value, and without notice of the claim or interest of a third party, here NAB.
 See Madison, 39 S.W.3d at 606; see also Tex. Prop. Code Ann. § 13.001(a)
(Vernon Supp. 2002) (rendering unrecorded conveyances of real property or interests
in real property void as to bona fide purchasers); Prowse v. Walters, 941 S.W.2d
223, 228 (Tex. App.—Corpus Christi 1996, writ denied) (stating that purpose of
recording statute is to protect those who take without notice of prior transfer from
injury or prejudice arising from lack of knowledge of prior claim).
          Notice may be actual or constructive. Gordon, 39 S.W.3d at 606. Actual
notice derives from personal information or knowledge; constructive notice is
imputed in law to a person with no personal information or knowledge. Id. As a
general rule, notice is a fact issue and thus inappropriate for resolution by summary
judgment. Hardy Road 13.4 Joint Venture v. Med. Ctr. Bank, 867 S.W.2d 889, 893
(Tex. App.—Houston [1st Dist.] 1993, writ denied) (notice or knowledge); Apex Fin.
Corp. v. Brown, 7 S.W.3d 820, 831 (Tex. App.—Texarkana 1999, no pet.) (actual
notice).
          NAB’s motion for summary judgment sought to defeat the notice element of
Patton Street’s bona fide purchaser defense. To prevail by summary judgment, NAB
had the burden to establish that Patton Street had actual or constructive notice of
NAB’s claims as a matter of law. Tex. R. Civ. P. 166a(a)-(b), comment. NAB
argued Patton Street had constructive notice of its claims by virtue of the future-advance clause in the recorded first lien, which triggered a duty in Patton Street to
investigate whether any indebtedness existed that might be encompassed by the
clause. The notice provided by a future-advance clause, however, extends only “so
far as a purchaser or junior creditor may, by an inspection of the record, by ordinary
diligence and common prudence, ascertain the extent of the incumbrance.” Willis
v. Sanger, 40 S.W. 229, 232 (Tex. Civ. App.—Dallas 1897, writ ref’d). 
          It is undisputed that the Harris County real property records revealed the
following information concerning the property when Patton Street purchased it in
1993 from the record owner, Lone Star, which released all liens in favor of Patton
Street: (1) Lone Star had acquired the first note, first lien, and vendor’s lien from the
RTC; (2) Central Freight had foreclosed the second lien securing the second note in
1991; (3) the foreclosure of the second lien extinguished the third lien;


 (4) the third
note and third lien expressly subordinated any liens securing the third debt to the
first and second liens; (5) the federal court judgment the RTC obtained in Civil
Action No. H-89-1150 did not refer to the property or the liens; and (6) Velma no
longer owned the property when the abstract of the federal judgment was filed with
the Harris County District Clerk. It is likewise undisputed that, when Patton Street
purchased the property, the real property records did not reveal any assignment of
the third note, the third lien, the federal judgment, or the first lien to NAB. 
          Although the future-advance clause in the first lien may have triggered a duty
of inquiry in Patton Street, an ordinarily diligent and prudent inspection of the real
property records would not have revealed NAB’s claims to a degree necessary to
establish constructive knowledge as a matter of law. NAB also mistakenly relies on
Patton Street’s failure to obtain an estoppel certificate from the RTC, the holder of
the first lien, to ensure the future-advance clause would not be enforced against any
indebtedness not disclosed by the real property records. See Southwest Title Ins. v.
Northland Bldg. Corp., 542 S.W.2d 436, 441 n.1 (Tex. App.—Fort Worth 1976),
aff’d in part and rev’d in part, 552 S.W.2d 425 (Tex. 1977). Although a properly
drawn estoppel certificate may afford that protection, id., failure to execute one does
not preclude bona fide purchaser status. NAB also relies on a lis pendens filed in the
federal action, Civil Action No. H-89-1150, as establishing that Patton Street had
constructive knowledge of NAB’s claims as a matter of law. But the abstract of that
judgment in the Harris County real property records indicated only an award to the
RTC of recited principal and interest; the abstract did not address the property, the
first and third liens, or the debts they secured. 
          NAB attributed actual knowledge to Patton Street and its codefendants by
relying on “numerous letters and correspondence,” directed either to them or their
attorneys, which referred to either the first lien, the lis pendens and judgment in the
federal court action, or the subject debt. NAB did not conclusively demonstrate,
however, that the correspondence afforded actual notice of NAB’s claims. 
Moreover, in responding to NAB’s motion for summary judgment, Patton Street
denied it had any knowledge, when it purchased the property, that NAB had any
interest in it. 
          Whether considered singly or together, these factors do not establish, as a
matter of law, that Patton Street had actual or constructive notice of NAB’s claims
and is thus barred from asserting its bona fide purchaser defense. 
          We sustain Patton Street’s sixth issue.
 Patton Street’s Standing to Challenge NAB’s Right to Foreclose
          In its fifth issue, Patton Street challenges whether NAB established that Patton
Street lacks standing to dispute NAB’s right to foreclose on the property.


 In
moving for summary judgment on this ground, NAB argued that only mortgagors or
those in privity with them may contest a mortgagor’s sale under a deed of trust and
that Patton Street is a stranger to title. See Mercer v. Bludworth, 715 S.W.2d 693,
698 (Tex. App.—Houston [1st Dist.] 1986, writ ref’d n.r.e.), disapproved on other
grounds by Shumway v. Horizon Credit Corp., 801 S.W.2d 890, 894 (Tex. 1991). 
As NAB acknowledges, a well-settled exception vests standing in third-party holders
of legal or equitable interests. See Goswami v. Metropolitan Sav. & Loan Ass’n, 751
S.W.2d 487, 489 (Tex. 1988); see also Henry v. Mr. M Convenience Stores, Inc., 543
S.W.2d 393, 396 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref’d n.r.e.)
(recognizing standing of third party holding equitable interest to sue to remove cloud
on title). In contending Patton Street has neither legal nor equitable interest in the
property, NAB disregards, in particular, Patton Street’s having purchased the
property for $1,200,000 and paid off the first lien and tax liens. This alone creates
an equitable interest in the property in Patton Street, which thus has standing to
challenge NAB’s right to foreclose on the property. 
          We sustain Patton Street’s fifth issue. 
Res Judicata Effect of Federal Court Judgment
          Patton Street’s third issue challenges whether NAB established, as a matter of
law, that a 1992 federal judgment bars Patton Street from challenging the rights
NAB derived through the future-advance clause in the first lien.


 NAB’s first
asserted basis in moving for summary judgment was that a 1992 federal court
judgment precluded Patton Street from contesting these rights. This argument refers
to the federal court judgment in Civil Action No. H-89-1150 in favor of the RTC, as
receiver for First Capital. This judgment, which adjudicated Velma liable for the full
amount of the third note, now worth approximately $5,000,000, is the judgment that
the RTC sold to NAB for $120,000 on October 13, 1993. 
          The premise underlying NAB’s plea in bar was that Central Freight, the holder
of the second note and lien, sued Velma in the federal court action, and also cross-claimed against First Capital for a declaration that the first lien secured only the first
debt and not the third debt, despite the future-advance clause in the first lien. On
settling its dispute with Velma, however, Central Freight abandoned its cross-claim
against First Capital, and the federal court judgment does not address it. In moving
for summary judgment in this case, NAB claimed Patton Street was barred, as a
matter of law, from contesting the lien rights NAB claimed under the future-advance
clause in the first lien because the final judgment in the federal court action disposed
of all matters before that court as a matter of law, including Central Freight’s cross-claim for declaratory relief. Patton Street contends the federal court judgment had
no preclusive effect because the judgment did not resolve Central Freight’s request
for declaratory relief. We agree. 
          Federal law determines the preclusive effect of a federal court judgment in
Texas state court. Eagle Properties, Ltd. v. Scharbauer, 807 S.W.2d 714, 718 (Tex.
1990). Barring an exception, res judicata applies under federal law when: (1) a final
judgment is rendered on the merits; (2) by a court of competent jurisdiction; (3) the
prior action and the subject action involve the same cause of action; and (4) the prior
action and the subject action involve the same parties. Id.; Home Indem. Co. v. Pate,
814 S.W.2d 497, 500 (Tex. App.—Houston [1st Dist.] 1991, writ denied). 
Unresolved requests for declaratory relief constitute a well-settled exception to the
claim-preclusion doctrine. Kaspar Wire Works, Inc. v. Leco Eng’g & Mach., Inc.,
575 F.2d 530, 535 (5th Cir. 1979); see 28 U.S.C. § 2201(a) (1994) (federal
Declaratory Judgment Act) (providing that any declaration of “rights and other legal
relations of any interested party seeking such declaration” shall “have the force and
effect of a final judgment or decree” and be reviewable as final judgment or decree). 
          Because the federal court judgment declared no rights on Central Freight’s
abandoned counterclaim, that judgment does not preclude Patton Street from
contesting the lien rights NAB claimed under the future-advance clause in the first
lien. Accordingly, NAB was not entitled to prevail by summary judgment on its
asserted affirmative defense of res judicata. 
           We sustain Patton Street’s third issue. 
          We need not address Patton Street’s remaining issues, numbers four and
seven, which challenge, respectively, the trial court’s declarations that Lone Star’s
1991 foreclosure sale was void ab initio and that Patton Street had no rights of
equitable subrogation. The invalidity of the Lone Star foreclosure is not a
dispositive issue for purposes of summary judgment for either party based on the
parties’ interpretations of the effect of the future-advance clause and may never be
reached, depending on the trial court’s resolution of the issues remanded. Likewise,
Patton Street’s equitable defenses arise only if NAB’s interpretation of the future-advance clause is correct.
Conclusion
          We incorporate our interlocutory order of April 20, 2000, granting the
unopposed motion to dismiss of appellant, Lone Star Truck Stop, Inc., and dismiss
its appeal. In all other respects, we reverse the judgment of the trial court and
remand the cause for further proceedings. 
 

 
 
 
     Tim Taft
     Justice
 
Panel consists of Justices Taft, Brister,


 and Price.



 
Do not publish. Tex. R. App. P. 47.4.