KATHLEEN CARDONE, UNITED STATES DISTRICT JUDGE
evolve Federal Credit Union appeals from a final order of the United States Bankruptcy Court for the Western District of Texas confirming Debtor Lucio Barragan-Flores Chapter 13 Bankruptcy Plan. Because the bankruptcy court misapplied the applicable law, this Court REVERSES the bankruptcy court's ruling and REMANDS the case for further proceedings consistent with this opinion.
I. BACKGROUND
The relevant facts are straightforward and undisputed. In February 2016, Lucio Barragan-Flores ("Debtor") entered into two loan agreements with evolve Federal Credit Union ("evolve"). Proofs of Claim, ECF No. 7-4. The first loan was secured by a 2011 GMC Sierra ("Sierra Loan"), and the second loan was secured by a 2016 Toyota Camry ("Camry Loan").Id. at 4, 8. Each loan was accompanied by a security agreement granting evolve a security interest in the vehicle securing the loan. Id. Significantly, the security agreements contain a cross-collateralization clause that states: "Collateral securing other loans with the Credit Union may also secure this loan." Id. The parties stipulated that evolve holds a perfected security interest in each vehicle and that the cross-collateralization clauses in the security agreements are valid. R. at 93, ECF No. 7-3[1] .
*399 In June 2017, Debtor filed his Chapter 13 Bankruptcy Petition. Bankruptcy Docket No. 1, ECF No. 7-2. Debtor's Petition listed the value of the collateral securing evolve's loans at $13,875 (the Sierra) and $15,225 (the Camry). R. at 23-24. To provide for the Sierra Loan, Debtor's Bankruptcy Plan proposed that he retain the Sierra and pay evolve $13,875 over sixty months at 5.25% interest. Id. at 53. In contrast, to provide for the Camry Loan, Debtor's Plan proposed that he surrender the Camry to evolve. Id. at 54.
evolve objected to Debtor's Plan, arguing that its treatment of the vehicles violated the Bankruptcy Code. Id. at 61-63. On October 4, 2017, the bankruptcy court held a hearing and overruled evolve's objection. See Bankruptcy Docket No. 14; R. at 103. The bankruptcy court then entered an order confirming the Plan. Bankruptcy Docket No. 15. In response, evolve filed a Motion to Vacate the confirmation order, which the bankruptcy court denied in a written opinion on November 14, 2017. Bankruptcy Docket Nos. 20, 24; R. at 120-31. This appeal followed. Bankruptcy Docket No. 28.
II. DISCUSSION
A. Jurisdiction
District courts have jurisdiction to hear "appeals from final judgments, orders, and decrees ... of bankruptcy judges entered in cases and proceedings" under the Bankruptcy Code. 28 U.S.C. § 158(a). Unlike elsewhere, a final order for the purposes of § 158 appellate jurisdiction need not dispose of the entire case. In re Moody , 817 F.2d 365, 367-68 (5th Cir. 1987). The Fifth Circuit has explained that "for the purpose of Yogi Berra's celebrated maxim, 'The game isn't over till it's over,' a bankruptcy proceeding is over when an order has been entered that ends a discrete judicial unit in the larger case." Id.
Here, the bankruptcy court confirmed Debtor's plan over evolve's objection, and evolve responded with a Motion to Vacate, which the bankruptcy court denied. See generally Bankruptcy Docket. The orders confirming the plan and denying the Motion to Vacate form the basis of this appeal. Appellant's Br. at 3, ECF No. 11. Accordingly, because "[t]here is little doubt that the bankruptcy court's confirmation order is binding and final," this Court has jurisdiction to hear the appeal. Eubanks v. FDIC , 977 F.2d 166, 171 (5th Cir. 1992) ; see 28 U.S.C. § 158(a).
B. Standard of Review
"When reviewing a bankruptcy court's decision in a 'core proceeding,' a district court functions as a[n] appellate court and applies the standard of review generally applied in federal court appeals." In re Webb , 954 F.2d 1102, 1103-04 (5th Cir.1992) (citation omitted). "[C]onfirmations of plans" are classified as a core proceeding. 28 U.S.C. § 157(b)(2)(L). Therefore, issues of statutory interpretation and mixed questions of law and fact are reviewed de novo. In re Bodenheimer, Jones, Szwak, & Winchell L.L.P. , 592 F.3d 664, 668 (5th Cir. 2009). In contrast, findings of fact are reviewed for clear error. Id.
C. Analysis
The dispute in this case centers on the Plan's treatment of the vehicles securing evolve's claims. As mentioned above, Debtor retained the Sierra and surrendered the Camry under the Plan confirmed by the bankruptcy court. evolve's argument on appeal is fairly straightforward. evolve *400 notes that both the Sierra Loan and the Camry Loan are secured by multiple pieces of collateral, namely the Sierra and the Camry, as a result of the cross-collateralization clauses. Appellant's Br. at 5-8. Further, evolve observes that while 11 U.S.C. § 1325(a)(5) allows a debtor to provide for a secured creditor's claim by either retaining or surrendering the collateral securing a loan, Fifth Circuit precedent prohibits a debtor from combining those options, i.e. , retaining some of the underlying collateral and surrendering the rest. Id. Consequently, evolve argues, the Plan violates § 1325(a)(5) because it impermissibly combines options by allowing Debtor to retain the Sierra and surrender the Camry. Id.
Section 1325(a) of the Bankruptcy Code contains a number of conditions that must be met before a bankruptcy court can confirm a Chapter 13 plan. See 11 U.S.C. § 1325(a). In particular, subsection (a)(5) relates to the rights of secured creditors and the disposition of collateral securing their claims. See itation index="13" url="https://cite.case.law/citations/?q=11%20U.S.C.%20%C2%A7%201325">id. § 1325(a)(5). Under (a)(5), a debtor must choose one of three options to provide for each secured creditor's claim. See id. First, the debtor can obtain the creditor's consent to the plan. Id. § 1325(a)(5)(A). Second, the debtor can pay the creditor the present value of the creditor's claim in installments over the course of the plan. Id. § 1325(a)(5)(B). And third, the debtor can "surrender[ ] the property securing such claim to such holder." Id. § 1325(a)(5)(C). If a debtor chooses the second option, known as "cramdown," the debtor can confirm the plan over a creditor's objection and retain the collateral for his or her own personal use. Assocs. Commercial Corp. v. Rash , 520 U.S. 953, 956-57, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997).
The Fifth Circuit previously analyzed how a debtor may employ § 1325(a)(5)'s options in In re Williams , 168 F.3d 845 (5th Cir. 1999), which involved a single loan secured by multiple pieces of collateral. Id. at 846. To provide for the creditor's claim, the debtor's plan sought to return some of the collateral and pay the cramdown value on the rest. Id. The Fifth Circuit unequivocally rejected the plan, explaining that "[t]he plain language of the statute does not give the debtor the right to adopt a combination of the options offered in (B) and (C)." Id. at 847. In other words, the plan must treat all collateral securing a loan in the same manner. See ids="11765467,11641668" index="25" url="https://cite.case.law/f3d/168/845/">id. To support that conclusion, the court relied in part on a Second Circuit opinion interpreting language in Chapter 12 of the Bankruptcy Code that is identical to the surrender provision in § 1325(a)(5). Id. There, the Second Circuit found that the statutory language "refers to all of the debtor's collateral, not part of it." Id. (citing First Brandon Nat'l Bank v. Kerwin , 996 F.2d 552, 556-57 (2d Cir. 1993) ).[2]
Turning to the facts in this case, there is no question concerning the validity *401 of the cross-collateralization clauses contained in the security agreement for each loan. In Texas, "collateral may secure future as well as past or present advances if the security agreement so provides." Tex. Bus. & Com. Code § 9.204 cmt. 5. Further, cross-collateralization clauses are applicable to all debts that "were reasonably within the contemplation of the parties at the time the debt instrument was made." W. Auto Supply Co. v. Brazosport Bank of Tex. , 840 S.W.2d 157, 159 (Tex. App. 1992) ; see also Wood v. Parker Square State Bank , 400 S.W.2d 898, 901 (Tex. 1966). Here, the parties and the bankruptcy court all agree that both the Sierra and Camry secure the Camry Loan by virtue of the cross-collateralization clauses. R. at 83-84, 93, 105. Moreover, given that the Sierra Loan and Camry Loan were essentially made contemporaneously, this Court has no reason to believe that the parties contemplated otherwise. See W. Auto Supply Co. , 840 S.W.2d at 159.
Therefore, like the debtor in In re Williams who had to either cramdown or surrender all of the collateral securing the loan, Debtor must either cramdown or surrender all of the collateral securing the Camry Loan, i.e. , the Sierra and the Camry. See In re Williams , 168 F.3d at 847. Instead, under the Plan confirmed by the bankruptcy court, Debtor has retained the Sierra through cramdown and surrendered the Camry. That result is not only counter to the holding in In re Williams , but it also appears to contravene the Fifth Circuit's reading of the surrender provision in § 1325(a)(5)(C). While the Fifth Circuit did not expressly hold that a debtor must always surrender all of the underlying collateral to provide for a claim under § 1325(a)(5)(C), the court's reliance on the Second Circuit's conclusion that identical language in Chapter 12 of the Bankruptcy Code "refers to all of the debtor's collateral" strongly suggests that surrender under § 1325(a)(5)(C) likewise involves all of the debtor's collateral.[3] See id.
The bankruptcy court, however, reached a different conclusion. Focusing on the fact that evolve holds two allowed secured claims-one based on each loan-the bankruptcy court found that Debtor's Plan could be confirmed under § 1325(a)(5). R. at 124-27. The bankruptcy court explained that the Plan elected only one option under § 1325(a)(5) for each loan. Id. at 126. As to the Sierra Loan, the Plan chose cramdown, and as to the Camry Loan, the Plan chose surrender. Id. Therefore, the bankruptcy court reasoned that the Plan was permissible because In re Williams "did not hold that a debtor must choose the same option under § 1325(a)(5) for two allowed secured claims." Id. at 127.
The Court agrees with the bankruptcy court's general approach; evolve holds two allowed secured claims, and each claim should be analyzed separately despite the cross-collateralization clauses. Indeed, creditors who make multiple cross-collateralized loans to the same debtor often file separate proofs of claim for each loan, and bankruptcy courts analyze them separately.
*402 See, e.g., In re McPhilamy , 566 B.R. 382, 385-92 (Bankr. S.D. Tex. 2017) ; In re Hobart , 452 B.R. 789, 792-97 (Bankr. D. Idaho 2011). Moreover, while evolve argues that "the loans are effectively one obligation," it filed separate proofs of claim for each loan, and its Brief categorizes its secured claims as based separately on the "Sierra Contract" and the "Camry Contract." See Appellant's Br. at 5-6.
Nevertheless, the Court respectfully disagrees with the bankruptcy court's finding that the Plan complies with § 1325(a)(5) as construed by the Fifth Circuit in In re Williams. In its order denying evolve's Motion to Vacate, the bankruptcy court distinguished In re Williams based on the number of claims at issue. R. at 125. Unlike the creditor in that case, who held only one claim, evolve holds two claims. Id. Yet, the bankruptcy court's order does not address why that distinction is material, or why the reasoning in In re Williams is inapplicable when the same collateral secures more than one claim. Instead, the bankruptcy court focused on a debtor's right to choose a different option under § 1325(a)(5) for each claim, and did not discuss the disposition of each piece of collateral. Specifically, the bankruptcy court noted that "[w]ith respect to one secured claim of evolve (based on the Camry Loan), the Debtor's Plan has provided for and selected only one option-surrender the Camry." R. at 126. That analysis overlooks the fact that the Camry Loan is also secured by the Sierra, and does not explain how Debtor can provide for evolve's claim based on the Camry Loan by surrendering only part of the underlying collateral. Rather, implicit in the bankruptcy court's analysis is the idea that, because the Sierra Loan is provided for in the Plan through cramdown, the Sierra is somehow no longer collateral for the Camry Loan. See id. The Court is unable to find support in the Bankruptcy Code or relevant case law for that result.[4]
Furthermore, the Fifth Circuit's opinion in In re Williams does not lend itself to any apparent distinction in cases where more than one claim is secured by the same collateral. As the bankruptcy court correctly understood, § 1325(a)(5) allows a debtor to choose only one option for each allowed secured claim. See In re Williams , 168 F.3d at 847. And if, as here, a creditor has more than one claim, In re Williams suggests that the debtor need not choose the same option to provide for both claims. See ids="11765467,11641668" index="39" url="https://cite.case.law/f3d/168/845/">id. Be that as it may, the Fifth Circuit's holding turned on the treatment of the collateral securing the claim at issue. See ids="11765467,11641668" index="40" url="https://cite.case.law/f3d/168/845/">id. Simply put, under § 1325(a)(5), the debtor's plan had to treat all collateral securing the claim similarly. See id. Were the holding in In re Williams inapplicable to debtors with multiple claims secured by the same collateral, then such debtors would be afforded greater flexibility in providing for secured creditors'
*403 claims even though those debtors and their collateral are more encumbered. That result is counterintuitive.
Accordingly, pursuant to the Fifth Circuit's holding in In re Williams , the Court concludes that the Plan confirmed by the bankruptcy court is impermissible under § 1325(a)(5) because it allowed Debtor to retain some of the collateral securing the Camry Loan and surrender the rest.
III. CONCLUSION
For the reasons above, the Court REVERSES the bankruptcy court's ruling confirming Debtor's Plan and REMANDS this case for further proceedings consistent with this opinion.
SO ORDERED .

The Record on the Court's electronic docketing system is split into four separate attachments. See ECF No. 7. The vast majority of the material is contained in the attachment labeled "Individual Designations." See ECF No. 7-3. Therefore, the Court refers to that attachment when citing to the Record in this Order.

The Fifth Circuit also relied on an excerpt from Collier on Bankruptcy to support its conclusion that the options in § 1325(a)(5) are mutually exclusive. See In re Williams , 168 F.3d at 847 (citing Collier on Bankruptcy ¶ 1325.06[2] [c] (15th ed. rev. 1997) ). Interestingly, Collier now states otherwise, explaining that "[w]hen there are multiple items of collateral, the debtor may decide to surrender some items and retain others." 8 Collier on Bankruptcy ¶ 1325.06[4] (16th ed. 2018). Moreover, courts outside the Fifth Circuit are split on the issue. Compare, e.g., United States v. White , 340 B.R. 761, 766 (E.D.N.C. 2006) (allowing partial surrender); In re McCommons , 288 B.R. 594, 596-97 (Bankr. M.D. Ga. 2002) (same) with In re Lemming , 532 B.R. 398, 406 (Bankr. N.D. Ga. 2015) (rejecting partial surrender); In re Elkins , No. 04-67961, 2005 WL 4030041, at *3 (Bankr. S.D. Ohio Aug. 16, 2005) (same).

The Court bases its ruling solely on the Plan's treatment of the Camry Loan. Concerning the Sierra Loan, the Plan valued the underlying collateral at $13,875 and proposed to pay out that amount plus interest. R. at 53. evolve did not object to the Plan's valuation. Therefore, the Plan's treatment of the Sierra Loan appears to comply with Chapter 13's cramdown provision. See 11 U.S.C. §§ 506(a), 1325(a)(5)(B), 1327(a) ; In re Duggins , 263 B.R. 233, 235-36 (Bankr. C.D. Ill. 2001) ("Unlike a negotiation to buy a house, for example, where offers expire, or are deemed rejected, unless affirmatively accepted by a date and time certain, the debtor's plan is an offer that is deemed accepted unless objected to prior to confirmation."). Thus, the Court does not consider the Sierra loan in evaluating the sufficiency of the Plan.

Treating the Sierra as though it is no longer collateral for the Camry Loan could make sense if the cross-collateralization clauses were somehow set aside. Courts have set aside state-law rights through "application of the principle that the Bankruptcy Code displaces or modifies conflicting state-law rights in the name of federal supremacy." In re Brown , 563 B.R. 451, 457 (D. Mass. 2017) (citing Stellwagen v. Clum , 245 U.S. 605, 613, 38 S.Ct. 215, 62 L.Ed. 507 (1918) ). Property rights, such as those that arise by virtue of a cross-collateralization clause, "are created and defined by state law." See Butner v. United States , 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). To the extent the bankruptcy court may have attempted to set aside evolve's state law rights stemming from the cross-collateralization clauses based on a conflict with § 1325(a)(5) and the Bankruptcy Code more generally, the court provided no such analysis. The parties have not made any such argument on appeal, so the Court considers this possibility no further.